Kenneth R. DAVIDSON and George B. Toney, Plaintiffs–Appellees–Cross Appellants,

v.

CANTEEN CORPORATION, Canteen Corporation Retirement Plan for Salaried Employees, Canteen Company–Division of TW Services, Incorporated Retirement Plan for Salaried Employees, et al., Defendants–Appellants–Cross Appellees.

Nos. 91–1270, 91–1348.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1991.

Decided March 18, 1992.

Thomas R. Meites, Michael M. Mulder, Joan H. Burger (argued), Roberta Levinson, Meites, Frackman, Mulder & Burger, Chicago, Ill., for plaintiffs-appellees-cross-appellants.

Max G. Brittain, Jr., Christopher Nelson, Susan H. Loeb, Gabriel Minc (argued), Kovar, Nelson, Brittain, Sledz & Morris, Chicago, Ill., for defendants-appellants-cross-appellees.

Before COFFEY, Circuit Judge, RIPPLE, Circuit Judge, and WISDOM, Senior Circuit Judge.[1]

WISDOM, Senior Circuit Judge.

The plaintiffs were employees of a company that amended a pension plan governed by the Employee Retirement Income Security Act ("ERISA")[2] to reduce significantly the rate of future benefit accrual for certain employees. The company did not provide the employees with advance notice of the change. Because ERISA requires an employer to give notice of such an

---

1. The Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

2. 29 U.S.C. § 1001 *et seq.*

amendment to all participants in the plan, the district court correctly granted summary judgment in the plaintiffs' favor. Because ERISA does not obligate the district court to award attorney fees to prevailing plaintiffs, and because the district court's decision not to award them in this case was well within its discretion, we affirm the summary judgment and also affirm the district court's denial of attorney fees to the plaintiffs in this case.

## I. BACKGROUND

The facts of this case are not in dispute.

Kenneth R. Davidson and George B. Toney, the plaintiffs/appellees/cross appellants, were vice presidents of Canteen Corporation. In 1984 and 1985 Canteen granted stock options to both. In 1985 Canteen established a retirement plan covered by ERISA ("the plan"). The plan calculated the amount of an employee's retirement benefits according to the average of his five years of highest compensation in the ten years preceding his retirement ("pensionable compensation"). The plan defined compensation as "remuneration paid by the employer to an employee for services rendered as reported or reportable on Form W-2 for federal income tax withholding purposes". A pamphlet Canteen distributed to its employees in early 1986 described the plan's benefits and defined "compensation" as "annual W-2 earnings". Any capital gains earned from exercising Canteen stock options were reported as income on an employee's W-2 form.

In April 1986 Canteen amended the plan, without providing notice to any participant, to exclude from its definition of "compensation" any income resulting from participation in the company's stock option plan. The change was made retroactively effective as of January 1, 1986.

At a meeting of Canteen employees in October or November of 1986, long after the amendment, Davidson and Toney were informed orally that stock option profits would not be included in pensionable com-

pensation. They were not told of the formal amendment to the plan.

Davidson and Toney both exercised their stock options in November 1986. Each sold his stock within two weeks. Davidson realized a gain of $171,022; Toney, $193,561. These gains were reported as earnings on the 1986 W-2 forms for both employees.

Davidson and Toney both retired in 1989. Davidson receives monthly pension benefits of $5,683.59; Toney receives $3,156.07. Those amounts would be $7,102.52 and $4,230.44, respectively, if Canteen had counted the gains they earned in exercising their stock options as pensionable compensation.

Davidson and Toney sued Canteen under ERISA and the Securities Exchange Act of 1934. The district court granted summary judgment in the plaintiffs' favor based on the notice provisions of ERISA. He granted summary judgment against them as to their alternate ERISA and Securities Act claims. He also denied the plaintiffs their attorney fees under ERISA's fee-shifting statute. Both sides appeal.

## II. DISCUSSION

Section 204(h) of ERISA [3] provides that a plan such as Canteen's retirement plan

> may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to
>
> (A) each participant in the plan....

Canteen provided Davidson and Toney no such notice before it amended the plan to exclude from the definition of pensionable compensation any income earned from the employee's exercise of stock options. Although Davidson and Toney received oral notice of the amendment before they exercised their stock options, such notice was futile: the Amendment had taken effect

---

**3.** 29 U.S.C. § 1054(h).

eleven months before. It denied them what § 204(h) requires: the opportunity to take advantage of an existing benefit before it is lost. We consider, in two steps, Canteen's arguments that the amendment did not violate § 204(h). First, we address its argument that the district court erred by misinterpreting words or phrases within § 204(h). Second, we briefly discuss the other factors raised by Canteen to show that § 204(h) means something other than it says. Because we find both of these arguments unavailing, we shall not discuss Davidson's and Toney's alternative arguments for upholding the district court's summary judgment.

A. The meaning of § 204(h)

Canteen contends that § 204(h) does not apply to a plan amendment that affects only a small and indeterminate number of plan participants, and only significantly reduces their benefits if a number of unpredictable contingencies (e.g., when, if, and at what price, they exercise stock options) are met. It presents various arguments to show that the district court misread the statute. We agree with none of them.

■ First, Canteen contends that the trial judge misapplied the word "significant" (from the phrase "significant reduction in the rate of future benefit accrual" in § 204(h)). Canteen suggests that any reduction the amendment caused was not significant because it was limited to so few participants, and applied to them only if certain conditions were met. The statute, however, does not apply only to amendments that affect *all* plan participants, affect participants in a uniform and predictable manner, or reduce their benefits by an amount accurately calculable at the time the amendment is passed. It applies to *all* significant reductions. We agree with the trial court that the reductions in this case— a decrease in annual pensions of more than $17,000 for Davidson and almost $13,000 for Toney, for life—*are* significant.

■ Second, Canteen contends that the reduction was not a "reduction in the rate of future benefit accrual" because it did not change the rate of future benefit accru-

al at all. Instead, Canteen argues, it merely reduced the forms of income to which the rate of future benefit accrual would apply. That is, the amendment excluded income earned in exercising stock options from the definition of compensation; it did not adjust the percentage of compensation that would figure in a participant's pension payments. In a hypertechnical fashion, Canteen is correct: while changing the compensation factor in the formula, it did not change the percent, 57 percent, applied to compensation. We agree, however, with Davidson and Toney that ERISA cannot allow a "clarification" (Canteen's word) of "compensation" to achieve the same result as a reduced rate of accrual without the same effects. For Davidson and Toney (and for *any* employee affected by the amendment) the distinction is meaningless. We hold that the amendment in this case, although it redefined pensionable compensation and did not formally adjust the percentage rate at which benefits would accrue, did guarantee that future benefits would accrue at a different, and slower, rate. It did therefore accomplish a significant reduction in the rate of future benefit accrual for purposes of § 204(h).

■ Third, Canteen points to other sections of ERISA that allow employers to provide notice of plan amendments long after the amendment takes effect. It suggests that the district court erred by reading § 204(h) to prevent a change that employers are allowed to effect (silently and at no cost) with other pension plans. They ask us, in effect, to ignore the special exception to the general rule that Congress deliberately created by enacting § 204(h). We would have to read § 204(h) through a looking glass to find in it the opposite of what it says. We decline to do so.

■ Fourth, Canteen argues that § 204(h) applies only if the plan amendment reduces not only the employee's benefits, but also the employer's "minimum funding obligation". The only plans subject to § 204(h) are those that are also subject to ERISA's minimum funding standards: defined benefits plans and money

purchase defined contribution plans.[4] Canteen lists several other defined contribution plans whose terms an employer could amend without providing notice under § 204(h). Canteen then seems to argue that, because § 204(h) does not require notice of more harmful amendments to similar plans, it should not require notice here, where the amendment is "unlikely" to reduce the employer's future funding obligation. Canteen warns that § 204(h), a limited exception, should not be allowed to swallow the general rule that notice is not required. We disagree. If an unambiguous, limited exception to the general rule does apply, there is more, not less, reason to enforce it. There is nothing in § 204(h), or anywhere in § 204, to suggest that our focus should be on the employer's funding obligation at all, much less that we should allow our consideration of it to blind us to the employee's future benefit accrual.

■ Finally, and in response to all of Canteen's arguments, we note the obvious common sense behind § 204(h). It is true that the effect of the amendment to the plan was uncertain, and contingent. But it was to remove that uncertain contingency—and to prevent its own liability for it—that caused Canteen to amend the plan. The "uncertainties" of whether stock options would be exercised for a profit, and whether they would be exercised during the five-year period by which pension benefits are measured, will almost always be uncertainties that cost the employer money. An employee will not exercise stock options if he cannot do so at a profit, and any period in which he does exercise them is more than likely to be the same period during which his pre-retirement salary is highest. Employers grant stock options as an alternative form of payment to their employees; it is potential income, for which the employer incurs no immediate liability and the employee can defer tax liability. It is not wrong for an employer to exclude the income from exercising stock options from the calculation of pension benefits. But to do without adequate notice, after assuring its employees that such income will count toward their pensions, will, in almost all cases, reduce, and reduce significantly, those employees' pension benefits. Such a change violates § 204(h).

B. Alternate sources of statutory construction

■ Canteen asks that we look beyond the statute itself—to legislative history, notices of the IRS, case law, and the absurdity of the result in this case—for an answer in its favor. Because the statute, at least as applied to the amendments in this case, is clear and unambiguous, we need not reach so far for help in construing it. We shall, however, briefly mention Canteen's arguments, which would fail even if we found them necessary to consider.

Congress originally proposed an advance notice provision only for amendments that completely freeze or terminate certain plans.[5] If that original intention had prevailed, it would probably not have applied to Davidson and Toney. But Congress passed a law that did not embody that intent. It broadened the law's language to reach a case such as this. A lack of recorded legislative intent on this subject does not mean that the effects of clear statutory language were not intended. Legislative silence cannot win this case for Canteen.

Nor can we find in notices of the IRS the answer that Canteen says it finds in them. The IRS has commented on three model plan amendments to help plan sponsors remain within the rules of the Tax Reform Act of 1986.[6] Although the IRS indicated that ERISA would not require advance notice of an amendment that would exclude compensation in excess of $200,000, none of those model amendments is similar to the amendment in this case.[7] Even if we

---

4. 29 U.S.C. § 1054(h)(2).

5. *See* H.R. 3500, 99th Cong, 1st Sess. 131 Cong. Rec. 28779–80 (1985).

6. Notice 88–131, 1988–2 C.B. 546 (1988).

7. Moreover, 26 U.S.C. § 401(a)(17) provides that no qualified pension plan can take into account compensation over $200,000 in any employee's compensation base. Thus, any amendment excluding compensation in excess of $200,000 would actually implement a requirement of the

were to defer to an IRS interpretation of ERISA, we cannot read that interpretation to say that § 204(h) does not apply to *any* amendment that reduces the amount of the participant's compensation.

Case law offers Canteen no more help. Section 204(h) has been the subject of only a few published cases. We cannot find the support that Canteen needs, and says it finds, in three cases that apply § 204(h) to amendments that reduced benefits for all plan participants.[8] No case suggests that § 204(h) would *not* apply in other situations, as where the benefits of only some participants were reduced.

Finally, Canteen suggests that the district court's summary judgment must be reversed because it reaches an absurd result, and fails to resolve internal inconsistencies in the law. We do not agree. The so-called "absurd" result in this case strikes us as sound, and legally correct. The amendment of a retirement plan to deprive some of the plan's participants of a benefit they were promised, when advance notice of that amendment would have allowed them to prevent injury from the amendment, is exactly what § 204(h) clearly outlaws. The burden such a notice requirement places on a plan sponsor is a burden Congress must have weighed, and decided to ignore (or to counterbalance with the word "significant"), in drafting and passing § 204(h). The result is not absurd.

## C. Attorney fees

■   ERISA authorizes the award of attorney fees to parties bringing actions under it. Its fee-shifting statute reads:

> In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.[9]

This Court has repeatedly emphasized that this discretion in deciding whether to award such fees prevents a *presumption* that prevailing plaintiffs under ERISA are entitled to their attorney fees.[10] The trial court's discretion, though broad, is not unlimited; this Court has provided trial judges with a five-factor test to decide when to award attorney fees. The factors are:

(1) the degree of the offending party's culpability or bad faith;

(2) the offending party's ability to satisfy personally an award of attorney fees;

(3) whether such an award will deter others from the same actions;

(4) the amount of benefit conferred by the action on all the members of the plan; and

(5) the relative merits of the parties' positions.[11]

The district court found that factors (2) and (3) weighed in the plaintiffs' favor, and that the other factors weighed in Canteen's favor. It concluded, in a well-reasoned order, that this case did not warrant an award of attorney fees because "the decision of the defendants was not without some reasonable justification and the question presented [was] to some degrees novel". We do not find that this decision amounted to an abuse of discretion.

The plaintiffs argue that the novelty of the question should work to their benefit and not their harm. The trial court found

---

Internal Revenue Code, and would benefit the plan.

**8.**  *Johnson v. St. Frances Xavier Cabrini Hospital,* 910 F.2d 594 (9th Cir.1990); *Aldridge v. Lily-Tulip, Inc.,* 741 F.Supp. 906 (S.D.Ga.1990); *Production and Maintenance Employees' Local 504 v. Roadmaster Corp.,* No. 87–4025, 1989 U.S. Dist. Lexis 8239 (S.D.Ill.1989).

**9.**  29 U.S.C. § 1132(g)(1).

**10.**  *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820 (7th Cir.1984); *Janowski v. Int'l Brotherhood of Teamsters,* 673 F.2d 931 (7th Cir.1982),

*vacated on other grounds,* 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983).

**11.**  *Janowski,* 673 F.2d at 940. In avoiding an approach to fee-shifting under ERISA that would approach the English Rule, this Court has also analogized the approach of the Equal Access to Justice Act, which refuses to grant attorney fees when the defendant's position is substantially justified. *Bittner,* 728 F.2d at 830. See n. 10.

that, although the plaintiffs had prevailed on a novel claim, Canteen had not violated § 204(h) in bad faith.[12] In that case, we cannot say that it is wrong to use the novelty of an argument to keep an unblamable defendant from having to pay the attorney fees of the plaintiff who succeeded in making the argument law.

The plaintiffs also argue retrospectively that, because four similarly situated employees of Canteen filed an identical lawsuit after the district court granted a summary judgment in this case, the trial court was wrong to decide that Canteen won *Janowski* factor (4). Although the plaintiffs' success may well lead to successful claims from other employees, it will remain irrelevant to over 95 percent of the plan participants, who were never granted stock options. The trial court did not punish Davidson and Toney for selfishness; it simply acknowledged that a reason for awarding attorney fees in many cases—because the plaintiffs' success will benefit a large class of others—is not as strong here, and is outweighed by the plaintiffs' self-interest and the defendants' good faith.

We shall not attempt to reverse this Court's well-established rule that prevailing plaintiffs under ERISA are not entitled to an award of attorney fees, nor will we reverse the district court's determination that the prevailing plaintiffs in this case should not receive them. The district judge faced an almost unique situation; he resolved it fairly.

## III. CONCLUSION

In granting summary judgment in favor of Davidson and Toney the district court correctly applied the notice provisions of § 204(h). In denying them an award of attorney fees it did not misapply ERISA's fee-shifting statute. We therefore AFFIRM.

---

**12.** The court supported this decision by noting the relative newness of the law itself. Section 204(h) was signed into law only a few weeks before Canteen amended the plan.