Georgia B. KOENIG, et al., on behalf of themselves and others similarly situated

v.

INTERCONTINENTAL LIFE CORP., et al.

Civ. A. No. 92–5768.

United States District Court, E.D. Pennsylvania.

March 15, 1995.

Aaron C.F. Finkbiner, III, Kathleen Milsark, Sheryl J. Cohen, Philadelphia, PA, for plaintiffs.

Susan Katz Hoffman, Andrew R. Rogoff, Brian T. Ortelere, Thomas J. Momjian, for defendants.

*MEMORANDUM AND ORDER*

DITTER, District Judge.

In this ERISA action, plaintiffs have moved for partial summary judgment on

Count II of their amended complaint.[1] For the reasons stated below, their motion is granted.

## I. FACTS

Plaintiffs' amended complaint arises out of a class action lawsuit brought by former employees of the Individual Insurance Products Division of CIGNA Corporation ("IIP"). Defendant, Intercontinental Life Corporation ("ILCO"), purchased IIP from CIGNA in December, 1988. ILCO assumed control of the IIP retirement plan and thereafter took certain actions which are the subject of this lawsuit. In the instant motion, plaintiffs assert that ILCO amended the IIP pension plan in 1990 by merging it into the ILCO pension plan that had been established in January, 1988. Plaintiffs argue that the purported amendment is ineffective because ILCO failed to give notice of the amendment to the plan participants.

## II. ERISA'S NOTICE REQUIREMENT

Section 204(h) of ERISA establishes that absent notice, a pension plan may not be amended to reduce significantly plan participants' rate of future benefit accrual. 29 U.S.C. § 1054(h).[2] This leads to a three-part inquiry. First, did ILCO "amend" the IIP plan within the meaning of § 1054(h)? Second, if ILCO did amend the plan, did the amendment significantly reduce the rate of future benefit accrual? Finally, did ILCO provide notice of the amendment at least 15 days before its effective date?

Plaintiffs claim that the merger in 1990 of the IIP pension plan (the plan for former IIP employees then employed by ILCO) into the ILCO pension plan was an amendment that significantly reduced the rate of future bene-fit accrual of the IIP plan. Plaintiffs conclude that defendants were required to give notice to the IIP plan participants, which ILCO allegedly failed to do. Defendants argue that a "merger" is not an "amendment," and so 29 U.S.C. § 1054(h) does not apply to the 1990 merger. Even if it does apply, they argue, plaintiffs have not offered evidence of a "significant" reduction in the rate of future benefit accrual. I find defendants' arguments unavailing.

### A. Does § 1054(h) Apply to Plan Mergers?

■ There has been little caselaw interpreting 29 U.S.C. § 1054(h), and still less discussing the merger-as-amendment question. *See, e.g., Davidson v. Canteen Corp.*, 957 F.2d 1404 (7th Cir.1992) (no dispute that Canteen amended its retirement plan without providing notice; court discusses whether there was significant reduction in rate of benefit accrual). Nonetheless, what little authority there is convinces me that a plan merger is a plan amendment and that § 1054(h) therefore applies. *In re Gulf Pension Litigation* involved, among other ERISA issues, Chevron's merger of the Gulf pension plan and the Chevron annuity plan into one Chevron retirement plan which, the court stated, reduced the benefits to former Gulf employees. 764 F.Supp. 1149, 1175 (S.D.Tex.1991), *aff'd sub nom. on different grounds, Borst v. Chevron Corp.*, 36 F.3d 1308 (5th Cir.1994). Chevron in that·instance treated the plan merger as a plan amendment and filed notice of the resulting reduction in plan benefit accruals.[3] *Id.* The court did not question Chevron's assumption that § 1054(h) required notice of the plan merger.

Similarly, the Sixth Circuit in *Sutter v. BASF Corp.* stated that BASF's decision to

---

**1.** Plaintiffs originally moved for partial summary judgment on Counts II and V of their amended complaint. In a stipulation dated November 28, 1994, the parties agreed that judgment would be entered against the defendants on Count V.

**2.** 29 U.S.C. § 1054(h) provides,
    (1) A plan ... may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to—
      (A) each participant in the plan[.]

**3.** Curiously, ILCO may also have considered—if only internally—that the merger was an amendment. A memorandum detailing the merger of the IIP Plan into the ILCO Plan states, "[t]his memo is in place of an amendment request form." (Pls.' Mot. for Summ. J., ex. I).

merge its basic retirement plan and its supplemental retirement plan into a consolidated plan, "constituted the establishment or amendment of a pension plan...." 964 F.2d 556, 562 (6th Cir.1992). Although *Sutter* involved a different question than the applicability of § 1054(h), the court nonetheless declined to differentiate between a plan merger and a plan amendment.

The Ninth Circuit implied that a merger of a pension plan's *terms* into those of another plan, rather than just a merger of *assets*, would be an amendment of the first plan. *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1524, 1526 (9th Cir.1993). *Watkins* involved an employee at the Hanford Nuclear Reservation who had worked for different contractors at the site; the different private contractors had their own pension plans. *Id.* at 1520. The Department of Energy consolidated responsibility for the site with one contractor, which in turn determined that the assets of the private contractors' plans would be merged into one pension plan for the whole site (the HOEP plan). *Id.* The court pointed out that the other plans' assets, not their terms, merged into the HOEP plan so that the contractor "could assume responsibility for administering the existing pension funds." *Id.* at 1524. Plaintiffs argued that the HOEP plan reduced their accrued benefits under the previous plans without complying with ERISA's amendment procedures. *Id.* at 1525. The court disagreed, stating that, given its conclusion that the previous plans were not a part of the HOEP plan for any purpose other than administering previously accrued and vested benefits, there was no amendment of the previous plans. *Id.* at 1526. Thus, *Watkins* implies that merging previous plans' terms into another plan, rather than just merging the assets for administrative purposes, would be an amendment of the previous plans. When the IIP pension plan was merged into the ILCO pension plan, the ILCO plan's formulas and definitions replaced the IIP plan's terms. Unlike *Watkins*, the instant case involves a new set of formulas and definitions and thus an amendment of the IIP plan.

I have been unable to find a case standing for the proposition that the applicability of § 1054(h) rests on how a plan change is labeled. It would be too easy to defeat the purpose of the notice requirement merely by terming a change a "merger" or "modification" rather than an "amendment." To hold that § 1054(h) is triggered only by the label "amendment" would place pension plan participants in a peculiarly precarious position at the mercy of semantics. In *Production and Maintenance Employees' Local 504 v. Roadmaster Corp.*, for example, defendant "clarified" a plan amendment in an attempt to remedy the amendment's violations of ERISA provisions. 954 F.2d 1397, 1400 (7th Cir.1992). The Seventh Circuit held that the "clarification," like the original amendment it sought to fix, violated § 1054(h) and was therefore itself ineffective. *Id.* at 1404.

In *Pickering v. USX Corp.*, the court held that a resulting change in the language of a pension plan was an amendment, although the defendant never termed it an "amendment," a "clarification," a "change," or anything else. 809 F.Supp. 1501, 1562 (D.Utah 1992). Rather, USX had entered into "the June Agreement," which named another company as a subsidiary under USX's 1987 pension agreement. *Id.* at 1561. Under the June Agreement, years of service with the subsidiary company differed significantly from the language of the 1987 pension agreement. The court found that USX had "thus amended the 1987 Pension Agreement within the scope of ERISA § 204(h) [29 U.S.C. § 1054(h) ], which governs such an amendment." *Id.* at 1562.

As the case law shows, a change in the terms of a pension plan, however the change was effected or termed, can be an amendment of the plan under § 1054(h), whether implemented as a plan amendment explicitly (*Davidson* ), a "clarification" (*Production and Maintenance Employees' Local 504* ), part of a sales agreement (*Pickering* ), or, as in *Gulf Pension Litigation* and the instant matter, a plan merger. Therefore, I hold that the 1990 merger of the IIP plan into the ILCO plan was a plan amendment for purposes of 29 U.S.C. § 1054(h).

**B. Was There a Significant Reduction in the Rate of Future Benefit Accrual?**

■ Because the plan merger was a plan amendment, the next question to consider is whether the amendment significantly reduced the rate of future benefit accrual. If not, ERISA does not require notice. In their motion, plaintiffs articulate the differences between the IIP pension plan and the ILCO pension plan into which it merged in 1990. There are differences in both the plans' formulas and in the projected benefits calculated under each plan. Before a comparison can be made, it is necessary to understand just which IIP plan should be compared with which ILCO plan.

■ ILCO established a pension plan for its employees in January, 1988 ("ILCO 1988"). ILCO amended the plan in 1989 to provide for changes in the tax laws ("ILCO 1989"). ILCO established a plan for former IIP employees on December 28, 1988 ("IIP 1988"). That plan was amended for tax law changes in 1989 ("IIP 1989") and, on January 1, 1990, was merged into the ILCO 1989 plan. (Pls.' Mot. for Summ. J., ex. H, p. 1). Therefore, to determine if there has been a significant reduction in the rate of benefit accrual, the IIP 1989 plan must be compared with the ILCO 1989 plan into which it was merged in 1990.[4]

The plans have different formulas for calculating pension benefits. (*Compare* Pls.' Mot. for Summ. J., ex. I *and* ex. H, p. 19). As defendants correctly state in their memorandum in opposition to plaintiffs' motion, the formulas alone do not reveal whether a significant reduction has occurred. Projected

benefit calculations, however, *do* allow a side-by-side comparison of the plans to ascertain if there has been a significant decrease. As I asked the parties to confirm [5] in my memorandum of November 15, 1994, the following table shows the proper comparison of projected benefits under the plans:

| Final Pay | | | IIP 1989 Plan | ILCO 1989 Plan |
|---|---|---|---|---|
| $20,000 | 10 | years | $2,700 | $1,840 |
| | 30 | years | 8,100 | 5,520 |
| $40,000 | 10 | years | 5,894 | 4,291 |
| | 30 | years | 16,200 | 11,040 |
| $100,000 | 10 | years | 17,894 | 13,711 |
| | 30 | years | 40,500 | 27,400 |
| $150,000 | 10 | years | 27,894 | 21,501 |
| | 30 | years | 66,366 | 48,301 |
| $200,000 | 10 | years | 37,894 | 29,411 |
| | 30 | years | 96,366 | 71,853 |

As these numbers make clear, there is no doubt that a significant reduction occurred when the IIP 1989 plan was merged into the ILCO 1989 plan. The reductions average $8,500 and range from 22% to 32%. I find that these are significant.[6] *See Davidson*, 957 F.2d at 1407 (decrease in annual pensions of more than $17,000 and $13,000 for life are significant).

Defendants argue that, rather than "looking simply at the formulas (and not at their effect in practice), a better comparison is the respective accrual rates." I am not sure just what the table above reveals if not examples of the formulas' effect in practice, which defendants have not challenged for accuracy or for which they have substituted other calculations. Nonetheless, even if I accept defendants' argument that I should ignore the

---

4. Defendants argue in their letter of November 16, 1994, that the IIP 1989 plan was in effect for only one year because the anticipated impact of the tax law changes was incorrect. They claim that the more accurate comparison is between the IIP 1988 plan and the ILCO 1989 plan. Defendants' argument assumes something about § 1054(h) that is not in the statute; namely, that a good faith amendment or an amendment based on faulty assumptions or incorrect interpretations is exempt from the notice requirement. ERISA does not ask, "why was this amendment made?" It asks only "was there an amendment and did it result in a significant reduction in the rate of future benefit accrual?"

5. The parties agreed that these estimates are correct. Defendants, however, argue that estimates from IIP 1988 should be used. See note 4 *supra.*

6. Even if I had used the IIP 1988 projected benefits for the comparison, as defendants urged, see note 4 *supra*, there would still have been a significant reduction, albeit slightly smaller, in all but one of the categories shown in the table. That one of the categories would show an increase does not save the amendment from the notice requirement. *Davidson*, 957 F.2d at 1407 (statute does not apply only to amendments affecting *all* plan participants or affecting all participants in a uniform manner).

projected benefits and compare only accrual rates, I still find that a significant reduction has occurred. Defendants explain that a 1% accrual rate means that for each $100 of pay and for each year of service, an employee will accrue $1.00 of retirement benefit. It follows that a decrease of .42% in the annual accrual rate means that for each $100 of pay and for each year of service, an employee's retirement benefit would be reduced by 42 cents. Defendants have submitted a table showing that the average decrease in annual accrual rates from the IIP 1989 plan was .42%. For an employee earning $100,000, a 1% accrual rate means that he or she will earn $1,000 in benefits for each year of service. Following the decrease, the employee would earn $580 for each year of service. I find that this is a significant reduction.

### C. Did ILCO Provide Notice to the Plan Participants?

The third inquiry I must address after finding as a matter of law that the plan merger was a plan amendment that significantly reduced the rate of future benefit accruals is whether defendants gave the required notice to the IIP plan participants. Without question, they did not.

Section 1054(h) requires that the plan administrator give notice of the plan amendment to every participant not less than 15 days before the effective date of the amendment. In this case, notice of the amendment—the plan merger—should have been provided no later than December 16, 1989, as the merger took effect on January 1, 1990. Plaintiffs have offered evidence that notice was not timely given. For example, one IIP plan participant stated that she learned of the plan merger on April 17, 1992. (Pls.' Reply Mem., ex. O, dep. of Edith Reumann). Defendants offer no evidence to the contrary that would raise a genuine issue of fact.

### III. CONCLUSION

I have found, as a matter of law, that ILCO's 1990 merger of the IIP retirement plan into the ILCO retirement plan was an amendment of the IIP plan and that 29 U.S.C. § 1054(h) therefore applies. Moreover, defendants have offered no evidence that would raise a genuine issue of fact as to whether the amendment resulted in a significant reduction in the rate of future benefit accrual, or whether they provided the notice that § 1054(h) requires. Because the purported amendment did not comply with the notice provision of 29 U.S.C. § 1054(h), plaintiffs' motion for partial summary judgment on Count II of their amended complaint must be granted. Therefore, the merger was not effective to reduce the rate of plaintiffs' future benefit accrual.

An appropriate order follows.

### ORDER

AND NOW, this 15th day of March, 1995, it is hereby ordered that plaintiffs' motion for partial summary judgment on Count II of the amended complaint is GRANTED; the purported 1990 amendment of the IIP Plan was ineffective; and the ILCO Plan shall calculate plaintiffs' retirement benefits under the IIP Plan that was in effect before the attempted 1990 amendment.