UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-2040

DENNIS P. BRADY,

Plaintiff - Appellee,

v.

THE DOW CHEMICAL COMPANY RETIREMENT BOARD; UNION CARBIDE EMPLOYEES' PENSION PLAN, formerly known as Retirement Program Plan for Employees of Union Carbide Corporation and its Participating Subsidiary Companies,

Defendants - Appellants.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  Robert C. Chambers, District Judge.  (2:06-cv-00025)

Argued: December 3, 2008          Decided: February 18, 2009

Before NIEMEYER and MICHAEL, Circuit Judges, and Rebecca Beach SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Robert Matthew Martin, PAUL, HASTINGS, JANOFSKY & WALKER, Atlanta, Georgia, for Appellants.  John Francis Dascoli, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Erin E. Magee, JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for Appellants.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal involves a dispute about whether the Dow Chemical Company Retirement Board (the "Dow Retirement Board," "Dow Board," or the "Board") and the pension plan it administers for employees of the Union Carbide Corporation ("UCC") failed to provide plan participants adequate notice of substantial plan amendments pursuant to the requirements of 29 U.S.C. § 1054(h). Dennis Brady sued the Board and the amended plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, alleging a violation of those notice requirements. The district court granted summary judgment to Brady. We affirm.

I.

Effective February 6, 2001, UCC became a wholly owned subsidiary of Dow Chemical Company ("Dow"). For the next two years the Dow Retirement Board continued to administer the traditional defined benefit pension plan that had been available to UCC employees: the Retirement Program Plan for Employees of Union Carbide Corporation and its Participating Subsidiary Companies (the "Prior UCC Plan"). As of February 7, 2003, however, the Board substantially amended the Prior UCC Plan and renamed it the Union Carbide Employees' Pension Plan (the "UCEPP").

3

The changes transformed the Prior UCC Plan into a pension equity plan whereby benefits accrued under a different formula than under the Prior UCC Plan. The UCEPP also uses different variables in its formula than the Prior UCC Plan. Benefits became available under the new UCEPP formula on February 7, 2003, but the UCEPP also grandfathered in certain Prior UCC Plan benefits. The UCEPP guaranteed plan participants the benefits that would have been available to them under the Prior UCC Plan had they retired on February 6, 2003. The Board refers to this as the "frozen February 6, 2003 pension benefit" or "the February 6, 2003 grandfather benefit." J.A. 118; 195. The UCEPP also provided that plan participants would continue to earn benefit accruals under the Prior UCC Plan through December 31, 2005. The Board refers to this as the "December 31, 2005 grandfather benefit." J.A. 196.

The Prior UCC Plan provided both normal retirement benefits and early retirement benefits. Normal retirement benefits were payable to those age 65 or older with one month of service, those age 62 or later with 10 years of service, or those whose age plus years of service totaled 85 (the parties refer to these participants as having 85 "points"). Plan participants not yet eligible for normal retirement benefits were nevertheless eligible for early retirement benefits in the form of a percentage of their full retirement benefits. This

4

percentage -- or "reduction factor" -- was based on length of service and age and was slightly more generous for individuals who were forced to retire early than for individuals who retired early voluntarily. The applicable reduction factors appear in Table 1 and Table 2 of the Prior UCC Plan. Table 1 was applicable to those individuals who retired early voluntarily, and Table 2 was applicable to those individuals terminated early involuntarily. Table 2 incorporated a benefit that "bridged" individuals from 83 to 85 points. That is, those individuals whose age plus years of service exceeded 83 were eligible for full benefits under Table 2.

Dennis Brady was employed by UCC until July 31, 2004, at which time he was involuntarily terminated. At the time of his forced retirement, Brady's age and years of service equaled 83.01: he was fifty-five years and five months old and had worked for UCC for twenty-seven years and seven months. Brady sought benefits under the December 31, 2005, grandfather benefit of $2,642.97 per month. He argued that he was eligible for full retirement benefits unreduced by a reduction factor because his age plus years of service exceeded 83, which meant that he was bridged from 83 to 85 under Table 2 of the Prior UCC Plan. He based his argument on the materials that Dow had distributed to plan participants; those materials indicated that the plan

5

amendments extended benefit accrual under the Prior UCC Plan through December 31, 2005.

The UCEPP administrators determined that Brady was only entitled to $2,361.00 per month. The December 31, 2005, grandfather benefit was applicable as an early retirement benefit, but the plan amendment specified that the applicable reduction factors were those indicated under Table 1 of the Prior UCC Plan without regard to whether a participant retired early voluntarily or involuntarily. In short, Table 2 was eliminated for purposes of the December 31, 2005, grandfather benefit. Pursuant to Table 1 the UCEPP administrators determined that a reduction factor of 0.9021 was applicable to Brady's benefits. Brady does not contest whether the UCEPP did in fact eliminate Table 2 for purposes of calculating the December 31, 2005, grandfather benefit.

Brady's complaint concerns the adequacy of the notice that the Dow Retirement Board provided to prior UCC Plan participants when they converted to the UCEPP. The plan amendments triggered a statutory notice requirement known as "204(h) Notice." See ERISA, Pub. L. No. 93-405, § 204(h), 88 Stat. 829 (codified as amended at 29 U.S.C. § 1054(h) (2000)). The Board did provide Prior UCC Plan participants a document that it identified as a 204(h) Notice. But Brady argues that the 204(h) Notice was deficient because it failed to adequately

6

inform plan participants about the elimination of Table 2 from those benefits grandfathered into the UCEPP through December 31, 2005. Further, Brady argues that this deficiency is an "egregious failure" to satisfy § 204(h). Section 204(h) requires notice for certain plan amendments, but it only affords a remedy to plan participants for an "egregious failure" to comply with those requirements. 29 U.S.C. § 1054(h)(6). In the event of such a failure, plan participants are entitled to the greater of those benefits available prior to the plan amendment and those benefits currently available under the amended plan. Id. § 1054(h)(6). Brady thus argues that he is entitled to the greater benefits he would have received under Table 2 of the Prior UCC Plan.

Brady filed his complaint in U.S. District Court under ERISA. See 29 U.S.C. §§ 1132, 1054. The parties stipulated that the UCEPP is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2) and may be sued in its own name under 29 U.S.C. § 1132(d)(1). Brady's complaint alleges that the Dow Retirement Board failed to provide adequate 204(h) Notice under ERISA (Count I) and that UCEPP administrators improperly calculated his benefits under a qualified domestic relations order (Count II). The parties filed cross-motions for summary judgment. The district court granted summary judgment to Brady on Count I, but granted summary judgment to the Dow

7

Board on Count II.  The Board appeals the grant of summary judgment to Brady as to Count I.  Brady does not appeal the summary judgment against him as to Count II.

## II.

The Dow Retirement Board argues that the notice it issued met the requirements of ERISA § 204(h).  In the alternative, it argues that it made a reasonable, good faith effort to comply with the statutory requirements sufficient to satisfy transitional rules applicable at the time the Prior UCC Plan was amended.  Finally, the Board argues that in no event did any deficiencies in its notice constitute egregious violations of § 204(h).

We review de novo a district court's ruling on a motion for summary judgment.  Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340, 343 (4th Cir. 2006).  Summary judgment is only appropriate when the moving party demonstrates that "no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law."  Kimmell v. Seven Up Bottling Co., 993 F.2d 410, 412 (4th Cir. 1993).

## III.

We first consider whether the 204(h) Notice issued by the Dow Retirement Board in this case was deficient.

8

Specifically, Brady alleges that the Dow Board failed to provide adequate notice with respect to the elimination of Table 2 for purposes of the December 31, 2005, grandfather benefit. Section 204(h) requires notice of "a significant reduction in the rate of future benefit accrual." 29 U.S.C. § 1054(h). A separate ERISA provision makes clear that "a plan amendment which eliminates or reduces any early retirement benefit or retirement-type subsidy (within the meaning of subsection (g)(2)(A)) shall be treated as having the effect of reducing the rate of future benefit accrual." Id. § 1054(h)(9). The Board does not dispute that the reduction in Brady's benefits that resulted from the elimination of Table 2 constituted a reduction in early retirement benefits or retirement-type subsidies. See also S. Rep. No. 98-585, at 30 (1984), reprinted in 1984 U.S.C.C.A.N. 2457, 2576 (noting that "a subsidy that continues after retirement" is considered a "retirement-type subsidy" under 29 U.S.C. § 1054(g)(2)(A) and contrasting it with disability benefits, death benefits, social security supplements, or medical benefits).

In determining whether the reduction in benefits in Brady's case was significant, we compare the amount of the benefit under the plan as amended with the amount of the benefit under the plan prior to the amendment. See Treas. Reg. § 1.411(d)-6, Q&A(7) (2003) (valid through April 9, 2003) (see

9

68 Fed. Reg. 17,277, 17,278 (Apr. 9, 2003)); see also Davidson v. Canteen Corp., 957 F.2d 1404, 1407 (7th Cir. 1992). The parties' stipulate that Brady would have been entitled to an additional $281.97 per month under Table 2 of the Prior UCC Plan. Thus, the applicable plan amendments resulted in a 10.7 percent reduction in benefits for Brady. We conclude that a reduction of this magnitude is significant. See Davidson, 957 F.2d at 1407 (finding reductions in annual pensions of $17,000 and $13,000 significant); Koenig v. Intercont'l Life Corp., 880 F. Supp. 372, 375 (E.D. Pa. 1995) (finding reductions in pensions between 22 percent and 32 percent significant). We also conclude that the Board could anticipate decreases in benefits of this magnitude at the time the amendment was adopted. See Treas. Reg. § 1.411(d)-6, at Q&A(7) (noting that whether an amendment provides for a significant reduction in benefits is determined "based on reasonable expectations taking into account the relevant facts and circumstances at the time the amendment is adopted").

Because the elimination of Table 2 caused a significant reduction in retirement benefits, adequate notice was required under ERISA § 204(h). This notice must be "written in a manner calculated to be understood by the average plan participant and [must] provide sufficient information . . . to allow applicable individuals to understand the effect of the

plan amendment." 29 U.S.C. § 1054(h)(2). The Board's 204(h) Notice issued to Brady and other plan participants failed in one respect: it did not provide adequate information about the elimination of Table 2 for purposes of the December 31, 2005, grandfather benefit.

The 204(h) Notice included the following information under the heading, "Grandfathered Provisions":

> It is important to note that when you retire on or after February 7, 2003, you will continue to have the right to elect to receive the monthly pension benefit, and associated eligibility dates and payment options you earned under the [Prior UCC Plan] through February 6, 2003. You will not receive a monthly pension benefit less than what you had earned before February 7, 2003.

> In addition, to further ease the transition to UCEPP, you will continue to earn benefit accruals under the [Prior UCC Plan] formulas through December 31, 2005. [Except for two modifications inapplicable to the current dispute that relate to how length of service is calculated and which indicia of earnings is used], [t]his benefit will serve as a minimum monthly pension benefit when you retire.

J.A. 164. This provision affirmatively suggests that the formulas used under the Prior UCC Plan will continue to be available through December 31, 2005, with two explicitly identified modifications but no other exceptions. Indeed, the February 6, 2003, grandfather benefit retained Table 2, furthering an understanding that Table 2 is part and parcel of the Prior UCC Plan formulas a plan participant would expect to be used in a grandfathered benefit.

11

The Dow Retirement Board argues that the language makes clear that only "benefit accruals -- not early retirement subsidies" -- continue through December 31, 2005. Appellant Br. at 17. We disagree that the Board's use of the term "benefit accruals" meant that "early retirement subsidies" were excluded. The statutory scheme treats benefit accruals as a term of art that includes retirement subsidies. See Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"), Pub. L. 107-16 § 659(b), 115 Stat. 38 (codified as amended at 29 U.S.C. § 1054(h)(9)) (making clear that early retirement subsidies should be treated as benefit accruals for purposes of ERISA § 204(h)). When Dow used the term "benefits accruals," it was incorporating the statutory definition. We therefore conclude that average plan participants would understand the 204(h) Notice language quoted above to grandfather into the December 31, 2005, grandfather benefit the formulas used under the Prior UCC Plan, which incorporate Table 2's reduction factors.

Other provisions of the 204(h) Notice further this understanding. The "Questions and Answers" section says,

Q3. What will happen to the pension benefit I earned under the current Union Carbide Retirement Program?

A3. You will not lose the benefit you have already earned under the Union Carbide Retirement Program. In addition, Dow has put transition credits and grandfathered provisions in place to help you transition to UCEPP.

12

J.A. 165. The import of this provision is to assure plan participants that the benefits available under the Prior UCC Plan, which included Table 2, would remain available under the UCEPP during the transition. Certainly, nothing in the 204(h) Notice flags the elimination of Table 2 in the December 1, 2005, grandfather provision. Insofar as the language of the 204(h) Notice is misleading about whether Table 2 is retained, it is inadequate under 29 U.S.C. § 1054(h)(2). See Amara v. Cigna Corp., 534 F. Supp. 2d 288, 339 (D. Conn. 2008) (finding that 204(h) Notice containing affirmatively misleading statements was not "written in a manner calculated to be understood by the average plan participant"). At the very least, the 204(h) Notice fails to provide sufficient information from which an average plan participant could understand that Table 2 would not be available under the December 31, 2005, grandfather benefit. We therefore agree with the district court's conclusion that the 204(h) Notice issued in this case was deficient in that respect.

IV.

The deficient notice raises the question of whether the Dow Retirement Board should nevertheless be treated as having complied with the requirements of § 204(h) by virtue of triggering a transitional good faith safe harbor that Congress created in its 2001 amendments to ERISA. See EGTRRA

13

§ 659(c)(2). Before it reached that question, the district court analyzed whether the Board committed an egregious failure to meet the requirements of § 204(h). We proceed in the same order of analysis for clarity of explanation.

Section 204(h) provides a remedy to plan participants in the event of an egregious failure to meet its requirements. 29 U.S.C. § 1054(6)(A). The statute provides that

> there is an egregious failure to meet the requirements of [§ 204(h)] if such failure is within the control of the plan sponsor and is
>
> (i) an intentional failure (including any failure to promptly provide the required notice or information after the plan administrator discovers an unintentional failure to meet the requirements of this subsection),
>
> (ii) a failure to provide most of the individuals with most of the information they are entitled to receive under this subsection, or
>
> (iii) a failure which is determined to be egregious under regulations prescribed by the Secretary of the Treasury.

29 U.S.C. § 1054(h)(6)(B). The district court determined that both subparagraphs (i) and (ii) were implicated in the present case, although it declined to conclude "that Defendants intentionally failed to mention the elimination of Table 2 in the first instance." J.A. 316. The court instead concluded that subparagraph (i) was only implicated to the extent that the Board failed to provide required notice _after_ becoming aware of an unintentional failure to meet the § 204(h) requirements.

14

We first consider whether the district court properly determined that the Dow Board failed "to provide most of the individuals with most of the information they [were] entitled to receive under this subsection [§ 204(h)]." 29 U.S.C. § 1054(h)(6)(B)(ii). We conclude that the evidence proffered by Brady in support of that determination was not sufficient. It is not enough that a "discernable subclass of employees" was not provided "adequate information." Brady v. Dow Chem. Co. Ret. Bd., No. 2:06-cv-00025 (S.D. W. Va. Sept. 13, 2007). The statute requires a court to find that "most of the individuals" did not receive "most of the information they [were] entitled to receive." 29 U.S.C. § 1054(h)(6)(B)(ii). Used as an adjective, "most" means "the greatest number of," "the majority of," or "greatest in quantity, extent, or degree." Webster's Third New International Dictionary 1474 (2002). Thus, § 1054(h)(6)(b)(ii) requires a determination that at least a majority of "applicable individuals," as that term is defined in § 1054(h)(8)(A), did not receive a large degree of information they were entitled to receive.

The correct denominator for concluding whether "most of the individuals" received sufficient information is the number of "applicable individuals" -- or those individuals whose rate of future benefit accrual is reasonably expected to be significantly reduced. 29 U.S.C. § 1054(h)(1)(requiring notice

15

to "each applicable individual"); id. § 1054(h)(8) (defining "applicable individuals" to include "each participant in the plan"); Treas. Reg. § 1.411(d)-6, at Q&A(9) (requiring notice only to those individuals whose benefits are reasonably expected to be significantly reduced). In the present case, the amendments converting the Prior UCC Plan to the UCEPP affected every plan participant. The record indicates that 100 percent failed to receive notice of the elimination of Table 2 in the December 31, 2005, grandfather benefit.

But the district court did not determine whether plan participants and other applicable individuals failed to receive a large degree of information that they were entitled to receive under § 204(h). A district court must in some way compare the magnitude of the deficiency in information to the magnitude of the information required under § 204(h) to find that "most of the individuals" did not receive "most of the information they [were] entitled to receive." See 29 U.S.C. § 1054(h)(6)(B)(ii). Because the district court failed to make such a comparison, it could not conclude that there was an egregious violation under § 1054(h)(6)(B)(ii).

We next examine whether the district court properly concluded that the Board "fail[ed] to promptly provide the required notice or information after the plan administrator discover[ed] an unintentional failure to meet the requirements

16

of this subsection [§ 204(h)]." 29 U.S.C. § 1054(h)(6)(B)(i). The court determined that "Defendants clearly knew that employees were questioning the elimination of Table 2 prior to Plaintiff's involuntary separation." J.A. 316. Undisputed evidence in the record makes clear that UCEPP administrators knew that multiple plan participants were confused about the status of Table 2. Dow's pension plan leader emailed plan personnel to inform them that there had been "several inquiries by UCC employees questioning the elimination of the 'bridging' provision as it relates to the grandfathered UCC pension benefit." J.A. 24. Moreover, as the court noted, Brady participated in a lengthy email exchange with Dow's pension plan leader in which Brady described why the 204(h) Notice was misleading with respect to whether the December 31, 2005, grandfather benefit would retain Table 2's reduction factors. Brady explained that the relevant language in the 204(h) Notice affirmatively suggested that the December 31, 2005, grandfather benefit would "contain both adjustment tables (a 'voluntary' table, and a 'involuntary' table)." J.A. 25. Based on this information, the district court properly concluded that the Board discovered its failure to provide sufficient information to allow average plan participants to understand that the plan amendment would eliminate Table 2 with respect to the December 31, 2005, grandfather benefit.

17

Moreover, the record reveals that the Dow Board failed to promptly rectify its deficient notice after being put on notice of it. The Board argues that it notified Brady "on at least four separate occasions that he would not receive an early retirement subsidy." Appellant Br. at 22. The first such occasion occurred by email in October 2003. That email described how to calculate Brady's February 6, 2003, benefit, for which Table 2 was retained. It did not explain that Table 2 was eliminated for purposes of the December 31, 2005, grandfather benefit, and it was not adequate under 29 U.S.C. § 1054(h)(6)(B)(i). The remaining three occasions cited by the Board also did not rectify the deficient notice. They occurred immediately prior to or after Brady retired and were a part of its communications denying him full retirement benefits under the bridging benefit of Table 2. We need not reach the question of what "notice or information" is minimally required under the statute. It is enough to conclude that the information that the Board relayed to Brady while denying him retirement benefits was not sufficient. Congress did not intend for pension plans to be able to satisfy the strictures of § 204(h) -- a notice requirement -- by communicating benefits reductions individually to plan participants at the time they seek and are denied ceased benefits. We thus agree with the district court that the Dow

Board committed an egregious violation of the 204(h) notice requirements under § 1054(h)(6)(B)(i).

V.

We turn finally to whether the good faith safe harbor provision requires us to treat the Dow Retirement Board as meeting the requirements of § 204(h) irrespective of our conclusions in parts III and IV, above. Congress's 2001 amendments to ERISA, which made clear that 204(h) Notice was required for reductions in early retirement benefits and retirement-type subsidies (in addition to benefit accruals for normal retirement benefits), provided for a transitional good faith safe harbor.

> Until such time as the Secretary of the Treasury issues regulations under sections 4980F(e)(2) and (3) of the Internal Revenue Code of 1986, and section 204(h) of the Employee Retirement Income Security Act of 1974, as added by the amendments made by this section, a plan shall be treated as meeting the requirements of such sections if it makes a good faith effort to comply with such requirements.

EGTRRA § 659(c)(2). In the regulations subsequently promulgated, the Secretary of the Treasury similarly provided that for plan amendments taking effect before the September 2, 2003, effective date of the regulations, the requirements of "section 204(h), as amended by EGTRRA, are treated as satisfied if the plan administrator makes a reasonable, good faith effort

19

to comply with those requirements." 68 Fed. Reg. 17,277, Q&A(18) (Apr. 9, 2003)(to be codified at 26 C.F.R. pts 1, 54, and 602).[1] The Dow Board argues that its efforts to satisfy § 204(h), even if technically deficient, were reasonable, made in good faith, and are thus insulated under the above transitional safe harbor.

The district court concluded that except for the two respects in which it determined that the Board egregiously violated § 204(h), "it cannot be said that Defendants failed to make a 'reasonable, good faith effort to comply' with the statutory requirements." J.A. 318. Our review is therefore limited to whether there was an unreasonable or bad faith effort to comply with § 204(h) as a result of the two egregious violations identified by the district court. It is further limited by our conclusion above that there was not sufficient evidence in the record to allow a determination that the Dow Board failed to provide "most of the individuals with most of the information they are entitled to receive." See 29 U.S.C. § 1054(h)(6)(B)(ii). Summary judgment is nevertheless appropriate if the Dow Board's failure to promptly rectify its

---

[1] Because we conclude that Dow did not make a good faith effort to comply with the requirements of § 204(h), we need not decide whether the "reasonable, good faith effort" contemplated in the Treasury regulations is the same as a "good faith effort" under EGTRRA § 659(c)(2).

deficient 204(h) Notice was tantamount to an unreasonable or bad faith effort to comply with § 204(h)'s requirements.

The district court concluded that there was a failure to provide notice after the plan administrator discovered an inadvertent deficiency in the plan's 204(h) Notice. The district court expressly declined to conclude that there was an intentional failure "in the first instance." J.A. 316. We must thus determine whether the failure that did occur is sufficient to establish that the plan failed to "make[] a reasonable, good faith effort to comply with [the] requirements [of section 204(h)]." 68 Fed. Reg. 17,277 Q & A(18). We conclude that it does.

The Board is not protected under the good faith safe harbor unless it acted in good faith in its efforts to comply with all of § 204(h)'s requirements. Those requirements include a continuing obligation to supplement a deficient § 204(h) notice. The statutory safe harbor provides that "Until such time [as regulations are issued interpreting IRC § 4980F and ERISA § 204(h)] a plan shall be treated as meeting the requirements of such sections if it makes a good faith effort to comply with such requirements." EGTRRA § 659(c)(2). This language indicates that the good faith effort contemplated by Congress was an ongoing obligation. It is not enough to have

21

made a good faith effort at the outset of a plan amendment. The text of § 204(h) further supports this understanding:

> [T]here is an egregious failure to meet the requirements of this subsection [§ 204(h)] if [there is a] failure to promptly provide the required notice or information after the plan administrator discovers an unintentional failure to meet the requirements of this subsection [§ 204(h)].

29 U.S.C. § 1054(h)(6)(B) (emphasis added). This provision affirms that there is a continuing obligation to correct a deficient § 204(h) notice. An act constituting an egregious failure to meet the requirements of § 204(h) necessarily constitutes a violation of § 204(h).[2] Congress may have been concerned about the ability of pension plans to satisfy the requirements of § 204(h) before Treasury clarified those requirements, but it apparently concluded that it was affording pension plans sufficient protection by placing any pension plan acting in good faith into its safe harbor.

We affirm the district court's conclusion that irrespective of whether the Board acted in good faith when it

---

[2] We do not reach any conclusions about the applicability of Internal Revenue Code (IRC), 26 U.S.C. § 4980F, which imposes a tax on pension plans that fail to exercise reasonable diligence in complying with notice requirements or fail to correct inadequate notice within thirty days "beginning on the first date such person knew, or exercising reasonable diligence would have known, that such failure [to provide adequate notice] existed." 26 U.S.C. § 4980F(c)(2). In particular, we do not offer an opinion on what reasonable diligence entails.

22

originally published its 204(h) Notice, it was no longer acting in good faith when it failed to promptly supplement its 204(h) Notice upon discovering a deficiency. The plan administrator received a coherent and compelling explanation that the 204(h) Notice was misleading with respect to whether the December 31, 2005, grandfather benefit retained Table 2's benefits. The language of the 204(h) Notice patently failed to provide sufficient information for an average plan participant to glean that Table 2's benefits would be eliminated with respect to the December 31, 2005, grandfather benefit. The record also contains undisputed evidence that the Board knew that multiple employees were in fact confused about this aspect of the plan amendment. This evidence supports the district court's determination that the Board failed to act in good faith when it declined to clarify its misleading (and thus deficient) 204(h) Notice.

## VI.

In sum, we hold that the district court properly concluded that the § 204(h) Notice the Dow Retirement Board provided to plan participants was deficient. Moreover, the deficiency amounted to an egregious failure to provide adequate § 204(h) notice because the Board failed to promptly provide additional notice or information upon discovering the

23

deficiency. We also conclude that summary judgment was appropriate notwithstanding the transitional safe harbor that insulates reasonable and good faith efforts to comply with amended § 204(h). The Board did not act reasonably and in good faith to satisfy its continuing obligation to supplement its deficient notice. Accordingly, the district court's order granting summary judgment to Dennis Brady is

<u>AFFIRMED</u>.