12 F.3d 118
 62 USLW 2436, 17 Employee Benefits Cas. 2209
 Richard H. HUNGER; Lloyd L. Betcher; Lawrence F. Possehl,
on behalf of themselves and all others similarly
situated, Appellants,
v.
AB; CD; EF; GH, whose true and correct names are unknown;
Plan Administrators, Fiduciaries, Named Fiduciaries,
Committee Members and Trustees of the Clevite Industries,
Inc. Hourly Retirement Plan; The Pullman Company; Clevite
Industries, Inc., Appellees.
 No. 92-2729.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 13, 1993.
Decided Dec. 17, 1993.
Rehearing Denied Jan. 21, 1994.
 
 Richard A. Miller, Minneapolis, MN, argued, for appellants.
 Brian D. Pedrow, Philadelphia, PA, argued, for appellees.
 Before BEAM, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 ROSS, Senior Circuit Judge.
 
 
 1
 Appellants Hunger, Betcher and Possehl, former employees of Clevite Industries, Inc., appeal from the district court's grant of summary judgment against them based on its conclusion that the anti-cutback provision of ERISA, section 204(g), 29 U.S.C. Sec. 1054(g), did not preclude the elimination of their early retirement subsidy. Based on our careful review of the record, briefs and arguments of the parties, we affirm the decision of the district court.
 
 I.
 
 2
 Appellants were employees of the Engine Parts Division of appellee Clevite Industries in Lake City, Minnesota, and were covered under Clevite's Hourly Retirement Plan (the Plan). Pursuant to the Plan, those who retired at age 65 received normal retirement benefits, while those who retired before age 65 received normal retirement benefits reduced by .5% per month for each month before the participant's sixty-fifth birthday. However, an "early retirement subsidy" was also available whereby a participant could retire under certain circumstances before the age of 65 with a normal retirement benefit reduced by only .2% per month. In general, in order to receive the early retirement subsidy, a participant must be at least 55 years of age and have completed ten years of service.
 
 
 3
 In February 1987, Clevite sold the assets of its Engine Parts Division to JPI Merger, Inc. (JPI), but did not sell the assets of the Plan. The appellants, along with other former Clevite employees, were offered employment with JPI. The appellants accepted this offer and continued to perform the same jobs at the same location for JPI. In July of 1987, The Pullman Company (Pullman) purchased the stock of Clevite, as well as the Plan. Pullman refused to give appellants the early retirement subsidy because the appellants had not met the age and service requirements to qualify for the subsidy before the Engine Parts Division sale to JPI.[1]
 
 
 4
 Appellants brought suit against Clevite, the Plan, and Pullman (collectively referred to as "appellees") for violating the anti-cutback provision of ERISA, section 204(g), 29 U.S.C. Sec. 1054(g). The district court granted appellees' motion for summary judgment concluding that section 204(g) of ERISA did not prevent Pullman from refusing to provide the early retirement subsidy because appellants had not met the Plan's age and service requirements to qualify for the subsidy before their employment with Clevite ended.
 
 II.
 
 5
 Congress enacted ERISA to ensure that an employee would not lose fully vested, accrued benefits in the event the employer terminated or amended its pension plan. Nachman Corp. v. PBGC, 446 U.S. 359, 374-75, 100 S.Ct. 1723, 1732-33, 64 L.Ed.2d 354 (1980). In 1984, ERISA was amended to add section 204(g), which was intended to prevent retirement plans from being amended to reduce or eliminate a participant's early retirement subsidy. Section 204(g) prohibits decreases in a participant's accrued benefit through amendment of the plan on the following basis:
 
 
 6
 (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan,....(2) For purposes of paragraph (1), a plan amendment which has the effect of--
 
 
 7
 (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
 
 
 8
 (B) eliminating an optional form of benefit,
 
 
 9
 with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.
 
 
 10
 29 U.S.C. Sec. 1054(g) (emphasis added).
 
 
 11
 Under section 204(g), a plan sponsor may not decrease a benefit subsidy through a plan amendment when the participant has satisfied the preamendment requirements for the subsidy at the time of the amendment or would otherwise be able to satisfy such requirements following the amendment. Thus, section 204(g) extends to all participants the right to "grow into" a benefit subsidy by satisfying the plan's preamendment eligibility requirements following the amendment to the plan. This limited benefit protection for retirement subsidies finds support in the legislative history of section 204(g):
 
 
 12
 The bill generally protects the accrual of benefits with respect to participants who have met the requirements for a benefit as of the time the plan is amended and participants who subsequently meet the preamendment requirements. The bill does not, however, prevent the reduction of a subsidy in the case of a participant who, at the time of separation from service (whether before or after the plan amendment), has not met the preamendment requirements.
 
 
 13
 S.Rep. No. 575, 98th Cong., 2d Sess. 28, reprinted in 1984 U.S.C.C.A.N. 2547, 2574. The Senate Report clearly provides that "the prohibition against reduction of a benefit subsidy ... applies to a participant only if the participant meets the conditions imposed by the plan on the availability of the subsidy." Id.
 
 
 14
 The first issue to consider in the present case is whether there has been an amendment to the Plan which serves to eliminate or reduce the early retirement subsidy. The appellants argue that the Third Amendment to the Plan, enacted on February 14, 1987, after the sale of the division to JPI, served to eliminate the availability of the early retirement subsidy for those employees who were subsequently employed by JPI. The Third Amendment provides in relevant part:
 
 
 15
 (f) Notwithstanding any other provisions of the Plan to the contrary, an Employee who is transferred to employment with J.P. Industries, Inc. ... pursuant to the sale of the assets of the Company's Engine Parts Division and who, at the time of transfer, had not completed ten Years of Vesting Service or attained Normal Retirement Age shall receive credit for Vesting Service for each full year ... in which he is employed by J.P.I. ... Such an individual's Termination of Vesting Service will be the date the individual terminates employment with J.P.I. Employment with J.P.I. will not be taken into account for purposes of determining Benefit Service or, except as provided above, for any other purposes under the Plan.
 
 
 16
 The Third Amendment, in effect, serves to confer an additional benefit upon those former Clevite employees who were subsequently employed by JPI by permitting them to earn additional service credit toward a deferred vested benefit during their employment with JPI. However, because of the limiting language in the last sentence of the amendment, this benefit enlargement does not apply to the early retirement subsidy. Appellants contend this limitation operates as an amendment to the Plan by eliminating their opportunity to receive the early retirement subsidy. However, this refusal to extend the opportunity to grow into the eligibility for the subsidy can only be considered an amendment which would trigger section 204(g), if the appellants were otherwise entitled to such extension under the original Plan. In other words, but for the Third Amendment, the appellants would have been entitled to earn additional age and service credits toward the early retirement subsidy by their subsequent employment with JPI.
 
 
 17
 The Plan in the instant case, however, prohibits such a possibility. Here, under the plain language of the Plan, the employees will earn age and service credits as participants of the Plan "until [their] employment with the Company and Affiliates terminates." The term "Company" is defined in the Plan as "Imperial Clevite, Inc." Therefore, once the participants began their employment with JPI, they were no longer employed by Clevite and were thus unable to satisfy the Plan's express eligibility conditions.
 
 
 18
 Our foregoing analysis renders two conclusions, both of which are fatal to appellants' claim. First, because the appellants were never entitled to apply employment with a successor company to their age and service requirements under the original terms of the Plan, there was no amendment to the Plan by virtue of the Third Amendment, and the protection of section 204(g) does not come into play. Second, even if we assume there was an amendment to the Plan, the protections of section 204(g) apply only if the participant can "satisf[y] (either before or after the amendment) the preamendment conditions for the subsidy." 29 U.S.C. Sec. 1054(g)(2). Because the appellants are no longer employed by Clevite, as expressly required by the conditions of the Plan, they are unable to satisfy the preamendment eligibility conditions and section 204(g) will not serve to preserve their entitlement to the early retirement subsidy.
 
 
 19
 Relying on the legislative history of section 204(g) as support for their position, the appellants cite a recent case from the Third Circuit which held that an employee who continues in the same job for a successor employer is not "separated from service"[2] so as to preclude his or her opportunity to grow into the retirement subsidy. Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1147 (3d Cir.1993). The Third Circuit supported its conclusion primarily through reference to Internal Revenue Service revenue rulings that the court conceded do not directly apply to either section 204(g) of ERISA, nor to its companion section of the Internal Revenue Code, 26 U.S.C. Sec. 411(d)(6). Although the court noted that the "separated from service" language does not expressly appear in section 204(g), it found, nonetheless, that "in interpreting neighboring sections of the IRC, the IRS has consistently taken the position that an employee will be considered separated from service "only upon the employee's death, retirement, resignation, or discharge, and not when the employee continues in the same job for a different employer as a result of liquidation, merger, consolidation, etc. of the former employer." Hoechst, 4 F.3d at 1146 (quoting Rev.Rul. 79-336 which interprets "separated from service" under IRC Sec. 402).
 
 
 20
 We find the appellants' reliance on Hoechst to be unpersuasive. First, because the plain language of section 204(g) applies only to a "participant who satisfies ... the preamendment conditions for the subsidy," we find it unnecessary to resort to the legislative history in order to decide the question presented under the facts of this case. See In re Erickson Partnership, 856 F.2d 1068, 1070 (8th Cir.1988) ("[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete.") (quoting Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987)). Here, the Plan expressly provides that the participant may only acquire age and service credits while employed with Clevite. The appellants' transfer to JPI now prevents them from satisfying the express conditions of the Plan.
 
 
 21
 Moreover, Hoechst is factually distinguishable and therefore inapplicable to our analysis in the instant case. The sale of the division by Hoechst to American Mirrex was made pursuant to an agreement that American Mirrex would provide substantially the same employee benefits as those Hoechst had provided. Thus, the employee/plaintiffs were subsequently employed by the plan sponsor that had assumed both the obligations and assets of the retirement plan.
 
 
 22
 In contrast, the transfer of the Engine Parts Division from Clevite to JPI in the instant case entailed no such agreements. JPI, the successor employer, assumed neither the obligations, nor the assets of the Plan. Instead, Clevite later sold the Plan to a third party, The Pullman Company. Thus, unlike the former Hoechst employees, the former Clevite employees ceased all employment with the sponsor of the Plan.
 
 III.
 
 23
 In summary, then, we conclude that the appellees did not violate the anti-cutback provisions of ERISA, section 204(g), by denying the appellants the early retirement subsidy. Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 At the time Clevite's assets were sold to JPI, appellant Possehl was 55 and had been employed by Clevite for 5 years, Betcher was 50 and had been employed for 30 years, and Hunger was 49 and had been employed with Clevite for 9 years
 
 
 [2]
 The legislative history of Sec. 204(g) provides in part that "[t]he bill does not, however, prevent the reduction of a subsidy in the case of a participant who, at the time of separation from service (whether before or after the plan amendment), has not met the preamendment requirements. S.Rep. No. 575, 98th Cong., 2d Sess. 28, reprinted in 1984 U.S.C.C.A.N. 2547, 2574 (emphasis added)