Richard W. NORMANN, Bruce Downie, Norman Hayner, and all others similarly situated, Plaintiffs,

v.

AMPHENOL CORPORATION, Defendant.

No. 95–CV–1097.

United States District Court, N.D. New York.

Feb. 3, 1997.

**160**

Higgins, Roberts, Beyerl & Coan, Schenectady, N.Y. (Michael E. Basile, of counsel), for Plaintiffs.

Buckley, Richardson & Gelinas, Springfield, MA (Kevin C. Maynard, of counsel), for Defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This case concerns a dispute over early retirement benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs are a class of current and former salaried employees of the Sidney Division of Amphenol Corporation who are challenging Amphenol's decision to reduce early retirement benefits. Plaintiffs seek invalidation of Amphenol's amendment of its Pension Plan, as well as monetary damages, claiming in their one-count Complaint that Amphenol violated sections 204(g) and 204(h) of ERISA. 29 U.S.C. § 1054(g) & (h).

In 1987, LPL Technologies, Inc. purchased Amphenol Corporation from Allied Signal. In that same year, LPL adopted a pension plan (the "1987 Plan") with respect to salaried employees at its Sidney Division. The 1987 Plan contained "generous" provisions for Amphenol salaried employees who retired before the age of 65. In 1992, Amphenol was named Plan Sponsor.

As a result of the Tax Reform Act of 1986 ("1986 Act"), Pub.L. No. 99–514, 100 Stat. 2085 (1986), plan sponsors were required to amend certain benefit formulas in order to retain the tax advantages enjoyed by qualified pension plans. The Secretary of the Treasury, through the IRS, was to promulgate regulations that implemented the 1986 Act.

Because the IRS anticipated that it would take considerable time for it to promulgate regulations interpreting the 1986 Act, the IRS authorized plan sponsors to "freeze" benefits as of January 1, 1989, thus allowing subsequent plan amendments to be retroactively effective to January 1, 1989.[1] *See* IRS Notice 88–131. In addition, the IRS provided a number of Model Plan Amendments that sponsors could adopt on a temporary basis to avoid ERISA's prohibition on decreases in accrued benefits. *See* IRS Notice 88–131, § II.

---

1. This "freeze" was necessary to avoid ERISA's prohibition on decreasing an employee's benefits that had already "accrued." *See* 29 U.S.C. § 1054(g).

On September 28, 1988, the Board of Directors of both Amphenol and LPL Technologies separately authorized certain officers to conform the Company's pension plans to the 1986 Act. Accordingly, LPL executed IRS Model Amendment III, which froze benefits effective January 1, 1989.[2]

On December 27, 1989, the LPL Pension Committee adopted a resolution ("1989 Resolution") that amended the 1987 Plan by reducing early retirement benefits payable to salaried employees.[3] (DeGeorge Aff., Exh. H). For example, the Plan no longer paid an "unusually liberal" benefit to employees who retired at age 55, but instead paid them only 50% of their full age 65 benefit. (DeGeorge Aff., Exh. H). On January 24, 1990, the full Board of Directors of LPL ratified the Pension Committee's resolution and on January 25, 1990, the Pension Committee of Amphenol ratified the 1989 Resolution as well. (DeGeorge Aff., Exhs. H & I).

On January 19, 1990, Amphenol sent out a memorandum addressed to all Sidney Salaried Employees notifying them that

> standard early retirement reductions have been put in place effective 1/1/89. In other words, if an employee retires at age 55 on or after 1/1/89, his benefit at age 65 will be reduced by 50%. It is important to note, however, that the early retirement reduction factors in place before 1/1/89 are protected with respect to the benefit credited to 12/31/88. Therefore, an employee will never receive less than his age 65 benefit credited to 12/31/88 reduced by the old liberal early retirement factors.

("1990 Memorandum") (DeGeorge Aff., Exh. G).

On January 14, 1991, Amphenol sent a memorandum explaining the Model Amendment III and at the same time distributed an updated Summary Plan Description ("SPD") to all salaried employees. (DeGeorge Aff., Exh. M). A similar memorandum, updated SPD, and notice regarding adoption of Model Amendment III were provided to all salaried retirees on February 1, 1991. (DeGeorge Aff., Exh. N).

## A. The Claims

On August 8, 1995, Plaintiffs filed the instant complaint alleging violations of 29 U.S.C. § 1054(g) & (h). Presently before this Court are Plaintiffs' Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. Specifically, Plaintiffs argue that Defendant did not properly "amend" the 1987 Plan until 1994 at the earliest, and thus were not entitled to retroactive application of the reduction in benefits to January 1, 1989. Plaintiffs also assert that Defendant's changes to the 1987 Plan required proper notice to plan beneficiaries under ERISA section 204(h) and that no such notice was properly given.

Accordingly, Plaintiffs seek to have the Pension Plan for Salaried Employees of the Sidney Division of the Amphenol Corporation reinstated as it existed in its 1987 form prior to Defendant's purported amendments to the plan.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Furthermore, it is the substantive law that will determine what facts are mate-

---

**2.** Although Model Amendment III's freeze on benefit accruals was only effective until December 31, 1989, the IRS subsequently authorized a continuation of the freeze if plan sponsors provided notice, as described in 29 U.S.C. § 1054(h) ("section 204(h) notice"), before December 31, 1990. *See* Revenue Procedure 89–65.

**3.** Specifically, LPL and Amphenol passed the following resolution:

> RESOLVED, that each of the Company's retirement plans for salaried employees be amended, retroactively to January 1, 1989, to be provided the following early retirement reduction factors:
> i) $\frac{1}{15}$ (6.67%) per year from age 60 to 65; plus $\frac{1}{30}$ (3.33%) per year from age 55 to 60; and
> ii) at age 55, the reduction factor shall be fifty percent.
>
> (DeGeorge Aff., Exh. I).

rial to the outcome of a case. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential, Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994).

### B. Amendment of the 1987 Plan

■ ERISA requires that "[e]very employee benefit plan ... be established and maintained pursuant to a written instrument" and "specify the basis on which payments are made ... from the plan." 29 U.S.C. § 1102(a)(1) & (b)(4). The purpose of the written document requirement is to allow an employee "on examining the plan documents, [to] determine exactly what his rights and obligations are under the plan." *Curtiss–Wright Corporation v. Schoonejongen,* 514 U.S. 73, ——, 115 S.Ct. 1223, 1230, 131 L.Ed.2d 94 (1995) (*quoting* H.R.Rep. No. 93–1280, at 297, 1974 U.S.Code Cong. & Admin.News at 4639, 5077, 5078) (emphasis removed). ERISA also requires that every benefit plan "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). Under ERISA, a change in the terms of a benefit plan is only valid if made in writing pursuant to the amendment procedure and by the amending authority set forth in the benefit plan. *See*

*Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 58–59 (4th Cir.1992) (modifications to a plan must be in writing and in conformity with formal amendment procedures); *Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1453–1454 (4th Cir.1992) (Wilkinson, J., concurring) ("written modification must be adopted in conformity with the amendment procedures set out in the plan in order to have effect"); *Alday v. Container Corp. of America,* 906 F.2d 660, 665 (11th Cir.1990) (plan cannot be changed by an oral or informal written amendment); *Washington Nat. Ins. Co. v. Hendricks,* 855 F.Supp. 1542, 1556–57 (W.D.Wis.1994) (writing that does not comply with the amendment procedures of the plan cannot become part of the plan).

■ However, ERISA does not dictate a set procedure for amending a plan. As the Supreme Court recently stated, "the literal terms of § 402(b)(3) are ultimately indifferent to the level of detail in an amendment procedure, or in an identification procedure" under ERISA. *Schoonejongen,* 514 U.S. at ——, 115 S.Ct. at 1229. In *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, ——, 115 S.Ct. 1223, 1229, 131 L.Ed.2d 94 (1995), the Supreme Court held that ERISA's amendment requirements were satisfied even where the sole procedure specified was simply that "[t]he Company reserves the right at any time to amend the plan." *Schoonejongen,* 514 U.S. at ——, 115 S.Ct. at 1226.

The *Schoonejongen* Court's guidance has not fallen on deaf ears in the Second Circuit. For example, in *Schonholz v. Long Island Jewish Medical Center,* 87 F.3d 72 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996), Judge Walker rejected the argument that in order to vest a severance plan, the change must be incorporated into the "formal plan documents." *Id.* at 78. Instead, Judge Walker noted:

The Supreme Court has clarified that such an adherence to formalities is not mandated by [ERISA]. Instead, "ERISA ... follows standard trust law principles in dictating only that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level." Therefore, any agreement to vest Schonholz's benefits

would only have to be memorialized at the same level of formality that [defendant] chose in promulgating the Severance Plan in the first place.

*Schonholz,* 87 F.3d at 78 (*quoting Schoonejongen,* 514 U.S. at ——, 115 S.Ct. at 1231).

■ Here, Plaintiffs argue that in order for Amphenol to validly amend the 1987 Plan, ERISA requires that the changes be adopted in formal, complete, and written form. However, this argument was expressly rejected by the *Schoonejongen* Court when it reversed the Third Circuit Court of Appeals, which had stated just such a requirement. *Compare Schoonejongen v. Curtiss–Wright Corp.,* 18 F.3d 1034, 1040 (3d Cir.1994) (holding that "[u]nless and until the *written plan is altered* ... neither the plan administrator nor a court is free to deviate from the terms of the original plan") (emphasis added), *reversed, Schoonejongen,* 514 U.S. at ——, 115 S.Ct. at 1223, *with Schoonejongen,* 514 U.S. at ——, 115 S.Ct. at 1231 ("ERISA [dictates] only that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level.").

■ Here, Article XII of the 1987 Plan governs plan amendments and states:

The Company hopes and intends to continue this plan indefinitely, but necessarily reserves the right, *by action of the Board of Directors,* at any time and from time to time to modify, amend, suspend or terminate in whole or in part any or all of the provisions of this Plan....

(DeGeorge Aff., Exh. A) (emphasis added). On December 27, 1989, the LPL Pension Committee adopted the initial resolution that amended the 1987 Plan. (DeGeorge Aff., Exh. H). On January 24, 1990, the full Board of Directors of LPL ratified the Pension Committee's resolution and on January 25, 1990, the Pension Committee of Amphenol ratified the 1989 Resolution as well. (DeGeorge Aff., Exhs. H & I). Clearly, Amphenol complied with the 1987 Plan's minimal dictates; under *Schoonejongen,* this is all that is required.

As the Second Circuit has recently noted, "[i]n *Schoonejongen,* the Supreme Court held that when a plan reserves amendment power to 'the Company,' 'one must look *only* to '[t]he Company' and not to any other person' as the entity authorized to amend the plan." *Algie v. RCA Global Communications, Inc.,* 60 F.3d 956, 960 (2d Cir.1995) (emphasis added) (*quoting Schoonejongen,* 514 U.S. at ——, 115 S.Ct. at 1228). Furthermore, "principles of corporate law provide a ready-made set of rules for determining, in whatever context, who has authority to make decisions on behalf of a company." *Algie,* 60 F.3d at 960 (*quoting Schoonejongen,* 514 U.S. at ——, ——, 115 S.Ct. at 1229, 1231).

Based on the uncontested facts presented here, the Court finds that Amphenol, pursuant to 29 U.S.C. § 1102, amended the 1987 Plan no later than January 25, 1990 (hereinafter the "1990 Amendment").

### C. Notice Requirements
#### i. 1990 Amendment

■ ERISA provides the following notice requirements pursuant to § 1054(h)(1):

A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and the effective date, to—

(A) each participant in the plan,

(B) each beneficiary who is an alternate payee ...

(C) each employee organization representing participants in the plan.

Here, Defendant does not appear to dispute that the 1990 Amendment to the 1987 Plan resulted in a "significant reduction" in benefits. Instead, Defendant argues (1) that early retirement benefits are not the type of benefits to which section 1054(h) notice is required, and (2) if they are, Amphenol provided adequate notice in 1990.

Few courts have addressed the precise coverage of § 1054(h). Those courts that have looked at § 1054(h), albeit in other con-

texts, appear to have concluded that § 1054(h) is to be read broadly. For example, in *Koenig v. Intercontinental Life Corp.*, 880 F.Supp. 372, 374 (E.D.Pa.1995), the court stated:

> It would be too easy to defeat the purpose of the notice requirement merely by terming a change a "merger" or "modification" rather than an "amendment." To hold that § 1054(h) is triggered only by the label "amendment" would place pension plan participants in a peculiarly precarious position at the mercy of semantics.

Similarly, in *Production and Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397 (7th Cir.1992), the Seventh Circuit held that the defendant's attempt to "clarify" a plan amendment in an attempt to remedy the amendment's violations of ERISA, itself violated § 1054(h). *Id.* at 1400, 1404.

These decisions are not surprising in light of the remedial nature of ERISA. As the Second Circuit has stated:

> [T]here can be no doubt that ERISA was enacted for the purpose of assuring employees that they would not be deprived of their reasonably-anticipated pension benefits; an employer was to be prevented from "pulling the rug out from under" promised retirement benefits upon which his employees had relied during their long years of service.... "The provisions of S. 4 are addressed to the issue of whether American working men and women shall receive private pension plan benefits which they have been led to believe would be theirs upon retirement from working lives. It responds by mandating protective measures, and prescribing minimum standards for promised benefits."

*Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1409 (2d Cir.1985) (*quoting* S.Rep. No. 127, 93d Cong., 1st Sess., *reprinted in*, 1974 U.S.Code Cong. & Ad.News 4639, 4838).

Moreover, other protective provisions in ERISA do cover early retirement benefits. Section 1054(g) provides:

> (1) The *accrued benefit* of a participant under a plan may not be decreased by an amendment of the plan....

> (2) For purposes of paragraph (1), a plan amendment which has the effect of—

> (A) eliminating or reducing an *early retirement benefit* or a retirement-type subsidy (as defined in the regulations), or

> (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.

29 U.S.C. § 1054(g) (emphasis added). Although courts have differed on this issue in the past, *see Ahng v. Allsteel, Inc.*, 96 F.3d 1033, 1034 (7th Cir.1996) ("In 1993, this Court concluded that early retirement benefits were not "accrued benefits" within the meaning of ERISA and thus were not protected by § 204(g).") (*citing Meredith v. Allsteel, Inc.*, 11 F.3d 1354 (7th Cir.1993)), currently eight Courts of Appeal, including the Second Circuit, regard early retirement benefits as "accrued benefits" within the meaning of § 1054(g). *See Ahng*, 96 F.3d at 1034 (7th Cir.); *Richardson v. Pension Plan of Bethlehem Steel*, 67 F.3d 1462, 1467–68 (9th Cir.1995); *Costantino v. TRW, Inc.*, 13 F.3d 969, 977 (6th Cir.1994); *Hunger v. AB*, 12 F.3d 118, 120 (8th Cir.1993); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1143–44 (3d Cir.1993); *Harms v. Cavenham Forest Indust., Inc.*, 984 F.2d 686, 692 (5th Cir. 1993); *Aldridge v. Lily–Tulip, Inc.*, 953 F.2d 587, 590 (11th Cir.1992); *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1410 (2d Cir.1985).

A finding that § 1054(h)'s notice requirements apply to early retirement benefits would comport with one of the central precepts of ERISA: disclosure. In *Schoonejongen*, the Supreme Court noted "that one of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time.... ERISA gives effect to this 'written plan documents' scheme through a comprehensive set of 'reporting and disclo-

sure' requirements." 514 U.S. at ——, 115 S.Ct. at 1230.

In light of ERISA's remedial nature, ERISA's reliance on disclosure, that early retirement benefits are not expressly excluded from § 1054(h), and the fact that early retirement benefits are considered accrued benefits subject to § 1054(g)'s protection, the Court holds that a significant reduction in early retirement benefits triggers the notice requirements of § 1054(h).[4] Accordingly, Amphenol must demonstrate that it provided adequate notice at the proper time as required by § 1054(h).

■ Section § 1054(h) mandates that notice be given after the adoption of an amendment that significantly reduces future benefit accrual; however, that notice must be given "not less than 15 days before the effective date of the plan amendment." 29 U.S.C. § 1054(h). This raises an interesting conundrum. Amphenol amended the 1987 Plan on January 25, 1990, but the effective date was more than one year *before* the adoption of the change itself: ie., January 1, 1989, due to Amphenol's previous adoption of the Model Amendment III which froze benefits. Consequently, it would have been impossible for Amphenol to give notice of the changes to the 1987 Plan "15 days before" their effective date.

In light of the complicated scheme associated with the Tax Reform Act of 1986, the Court will not require the impossible. Thus, § 1054(h) notice need not have been provided before the amendment's effective date. However, this does not obviate Amphenol's duty to provide adequate § 1054(h) notice such that the 1990 Amendment could become retroactively effective.

■ Section 1054(h) requires "a written notice ... *to each participant.*" 29 U.S.C. § 1054(h)(1) (emphasis added). To further emphasize the need to provide notice to each individual participant, ERISA does not less-

en this requirement when a plan administrator gives notice to employee representatives; to the contrary, section 1054(h) requires a plan administrator to provide "written notice ... [to] each participant [*and* ] each employee organization representing participants in the plan." 29 U.S.C. § 1054(h); *see also Pickering v. USX Corp.*, 809 F.Supp. 1501, 1563 (D.Utah 1992) (holding that "[c]onstructive notice through a member's union bears no relation to section 204(h)'s actual language").

Here, Amphenol argues that it provided sufficient notice on January 19, 1990, when it distributed a memorandum addressed to all Sidney Salaried Employees. (*See* DeGeorge Aff., Exh. G). However, that memorandum did not mention the specific early retirement reduction factors that Amphenol had adopted. Instead, the January 19, 1990 Memorandum simply stated that "standard early retirement reductions have been put in place effective 1/1/89. In other words, if an employee retires at age 55 on or after 1/1/89, his benefit at age 65 will be reduced by 50%." (DeGeorge Aff., Exh. G).

■ Section 1054(h) explicitly states that an amendment cannot become effective until a "plan administrator provides a written notice, setting forth *the plan amendment.*" 29 U.S.C. § 1054(h)(1) (emphasis added). In its January 19, 1990 Memorandum Amphenol provided no details with respect to the manner in which the reduction in early retirement benefits would occur. Instead, Amphenol provided its synopsis of the changes; it did not provide "the plan amendment" itself. Clearly, Amphenol's employees could not have been expected to equate the phrase "standard early retirement reductions" with the actual reductions adopted: "$\frac{1}{15}$ (6.67%) per year from age 60 to 65; plus $\frac{1}{30}$ (3.33%) per year from age 55 to 60." (DeGeorge Aff., Exh. I). Indeed, § 1054(h) does not require them to. The informational meetings that Amphenol held for its salaried employ-

---

4. In reaching this conclusion the Court notes that the IRS has recently promulgated regulations that state that "future benefit accrual is determined without regard to optional forms of benefit ..., early retirement benefits, or retirement type subsidies." 26 C.F.R. Part 1, § 1.411(d)–6T, A–5(b). However, the Court need

not address here whether the IRS regulations comport with the plain language of ERISA because the regulations state: "This section applies to amendments adopted on or after Dec. 15, 1995 and amendments effective by their terms on or after Jan. 2, 1996." 26 C.F.R. Part 1, § 1.411(d)–6T, A–15(b).

ees were also not sufficient notice under ERISA. § 1054(h) explicitly requires "written notice."

For these reasons, Plaintiffs argue that Amphenol did not provide adequate notice of the 1990 Amendment as required by ERISA. In fact, Plaintiffs argue that Amphenol has not yet complied with § 1054(h)'s requirements.

■ On this point, the Court disagrees. From the record, it appears that the next written communication concerning the 1990 Amendment to the 1987 Plan occurred on January 14, 1991, when Amphenol sent a memorandum explaining Model Amendment III and at the same time distributed an updated Summary Plan Description to all salaried employees. (DeGeorge Aff., Exh. M). A similar memorandum, updated SPD, and notice regarding adoption of Model Amendment III were provided to all salaried *retirees* on February 1, 1991. (DeGeorge Aff., Exh. N).

Consequently, by February 1, 1991, every plan participant had been sent an updated SPD, which contained the 1990 Amendment. ERISA clearly places emphasis on the summary plan descriptions as a means of communicating plan provisions. As the Second Circuit has remarked: "We previously have noted that ERISA was designed to 'ensure[ ] ... that [summary plan descriptions], drafted in understandable language, be the primary means of informing participants and beneficiaries.' " *Schonholz,* 87 F.3d at 77–78 (*quoting Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988)); *see also DiCioccio v. Duquesne Light Co.,* 911 F.Supp. 880 (W.D.Pa.1995) (stating that SPD's constitute adequate notice under § 1054(h)).

Thus, on February 1, 1991, Amphenol met the notice requirements of § 1054(h) by providing "a written notice ... to each participant" in the 1987 Plan. However, the 1990 Amendments could not become retroactively effective until that notice was provided. *Accord, Koenig,* 880 F.Supp. at 376 (holding that because § 1054(h) notice was insufficient, plan amendment could not become effective); *Davidson v. Canteen Corp.,* 957 F.2d 1404, 1406 (7th Cir.1992); *Pickering,*

809 F.Supp. at 1563 ("USX's violation of section 204(h) rendered the terms of the June Agreement and the LaRoche Sales Agreement ineffective."); *Pratt v. Petroleum Prod. Management Employee Sav. Plan & Trust,* 920 F.2d 651 (10th Cir.1990) (remedy for section 204(h) violation is computation of pension benefit under pre-amendment version of plan).

The question remains, however, whether Amphenol's attempted retroactive application of the 1990 Amendment violated § 1054(g)'s prohibition on reducing accrued benefits. If the benefit freeze was in effect on February 1, 1991, then because no benefits had accrued from January 1, 1989 through February 1, 1991, no accrued benefits were reduced by the 1990 Amendment. However, if the benefit freeze expired before February 1, 1991, then Amphenol's retroactive application of the 1990 Amendment resulted in a decrease in accrued benefits.

### ii. Model Amendment III

■ According to the IRS Notice setting out Model Amendment III and IRS Revenue Procedure 89–65, employers who adopted Model Amendment III were not required to give notice about the amendment under section 1054(h) unless the employer continued the suspension of benefit accruals beyond the last day of the 1990 pension plan year. *See* Rev.Proc. 89–65, 1989–2 C.B. 786; I.R.S. Notice 88–131, 1988–2 C.B. 546; *Anderson v. Resolution Trust Corp.,* 66 F.3d 956, 959 (8th Cir.1995) (holding that "[b]ased on these publications, the RTC was not required to give notice of the 1989 plan amendment because the RTC did not continue the suspension of accruals beyond December 31, 1990").

The IRS authorized a continuation of the freeze if plan sponsors provided notice, as described in 29 U.S.C. § 1054(h), before December 31, 1990. *See* Revenue Procedure 89–65. IRS Revenue Procedure 89–65, however, stated unequivocally that extension of the freeze would be allowed only where "notice described in section 204(h) of the Employee Retirement Income Security Act of 1974 (ERISA) is provided no later than the end of the 1990 plan year to all participants

employed as of such date." Revenue Procedure 89–65 Sec. 4.02(2).

Here, Amphenol's 1990 plan year ended on December 31, 1990. Thus, in order for Amphenol to take advantage of Model Amendment III's freeze on benefits, Amphenol must show that at a time before December 31, 1991, it provided proper § 1054(h) notice of the extension of the benefit freeze to all participants employed on the date of such notice. If Amphenol cannot show this, then the freeze on benefits expired on December 31, 1990. Thereby making Amphenol's 1990 Amendment, which reduced benefits effective January 1, 1989, an improper reduction of accrued benefits in violation of § 1054(g).

At first blush, there appears to be a disputed issue of fact as to whether proper notice was given under § 1054(h) with respect to an extension of the suspension of benefits beyond December 31, 1990.[5] Defendant states that notice of the extension of the freeze past December 31, 1990 was posted at the Sidney Division plant on or about December 14, 1990, and subsequently delivered to salaried employees on January 14, 1991. (*See* Stulman Opp.Aff., ¶¶ 3, 4, Exhs. A–C). However, Defendant offers no evidence, in fact they do not even argue, that the bulletin they posted actually provided notice "to all participants employed as of such date," as required by Revenue Procedure 89–65 Sec. 4.02(2). In opposition, Plaintiffs offer the affidavits of five persons who were employed at the Sidney Plant in December 1990, all of whom state that they did not see any postings concerning the pension plan for salaried employees. (*See* Peters Aff.; Krantz Aff.; Marmillion Aff.; Long Aff.; Cole Aff.).

Even after resolving all ambiguities and drawing all reasonable inferences against the moving party, *see Matsushita Elec.*, 475 U.S. at 586, 106 S.Ct. at 1355–56, it is clear that Defendant has failed to demonstrate that a genuine issue of fact exists as to whether "notice described in section 204(h) of the Employee Retirement Income Security Act of 1974 [was] provided no later than the end of the 1990 plan year to all participants em-

ployed as of such date." Revenue Procedure 89–65 Sec. 4.02(2).

Accordingly, the Court finds that Amphenol did not extend the freeze on benefits past December 31, 1991. Thus, Amphenol's attempted retroactive application of the 1990 Amendment violated § 1054(g)'s prohibition on reducing accrued benefits.

## III.  CONCLUSION

In summary, the Court finds that Amphenol amended the 1987 Plan no later than January 25, 1990. However, it was not until February 1, 1991, when Amphenol met the notice requirements of § 1054(h) by providing "a written notice . . . to each participant" in the 1987 Plan, that the 1990 Amendments became retroactively effective.

Furthermore, the Court finds that Amphenol did not extend the freeze on benefits past December 31, 1991. Consequently, Amphenol's attempted retroactive application of the 1990 Amendment violated § 1054(g)'s prohibition on reducing accrued benefits. The Court finds that Defendant is liable to Plaintiffs for accrued early retirement benefits calculated under the reduction factors as they existed in the 1987 Plan for the time period from January 1, 1989 through February 1, 1991.

It is therefore **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is GRANTED IN PART. Defendants' Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

---

**5.** Defendant correctly notes that IRS Rev.Proc. 89–65 only requires notice to current employees, not to retirees.