**Concetta COPELAND, Plaintiff,**

v.

**GEDDES FEDERAL SAVINGS & LOAN ASSOCIATION RETIREMENT INCOME PLAN; and Geddes Federal Savings and Loan Association, Defendants.**

No. 95–CV–1046.

United States District Court, N.D. New York.

Aug. 6, 1999.

Scolaro, Shulman, Cohen, Lawler & Burstein, P.C., Syracuse, NY, for plaintiff, Ted H. Williams, Stewart M. McGough, of counsel.

Matthews and Hall, Syracuse, NY, for defendants, Daniel F. Mathews, Jr., Daniel F. Mathews, III, of counsel.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

## I. *INTRODUCTION*

The plaintiff, Concetta Copeland ("Copeland" or "plaintiff"), is a resident of Camillus, New York, located within the Northern District of New York, and brings this action pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 ("ERISA"). The defendant Geddes Federal Savings & Loan Association Retirement Income Plan ("Plan") is an employee benefit plan within the meaning of ERISA § 1002(2)(A). The defendant Geddes Federal Savings and Loan Association ("Bank"), is the administrator of the Plan within the meaning of § 1002(16)(A) and a fiduciary to the Plan within the meaning of § 1002(21)(A). Plaintiff is seeking past and future retirement benefits pursuant to the Plan.

## II. *TRIAL*

A one day bench trial was conducted on March 15, 1999, in Syracuse, New York. The plaintiff called five witnesses: (1) Sylvia Salvagno, a former employee of the Bank and a former administrator of the Plan; (2) Gerald Heaton, an actuary called as an expert witness; (3) the plaintiff; (4) Jack F. McPeak, a senior Vice President/Chief Financial Officer with the Bank, and the current administrator of the Plan; and (5) John Harrison, President of the Bank. The defendant called two witnesses: (1) Mr. McPeak; and (2) James A. Hughes, the Plan consultant for the Bank. In addition, the parties stipulated or made no objection to the receipt into evidence of thirty-two documentary exhibits. Post trial memorandums of law were filed by both sides on May 7, 1999.

Based upon a review of the minutes of the trial, the exhibits received into evidence, the pleadings, and all other submissions, together with an evaluation of the credibility of the various witnesses, the following constitutes the Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52(a).

## III. *FINDINGS OF FACT*

Copeland was an employee of the Bank from March 24, 1986 to December 31, 1993. As an employee of the Bank, she was, and still is, a participant in the Plan.

The Plan was amended and restated effective January 1, 1981. (Pl.'s Ex. 1.) On November 13, 1984, the Plan was amended to enhance the early retirement options, including the Social Security Option. The amendment provided that the "[e]arly re-

tirement percentage factor [would be] increase[d] to ½ then on present plan tables with an approximate additional annual cost of $3800.00 per year." (Pl.'s Ex. 3.) The adjustment factors to achieve that result were contained in Table A to the Plan. (Pl.'s Ex. 6.)

In May 1989, Rosemary Campagnoni, a Bank employee, elected to retire under the Social Security Option. She received her retirement benefits as computed using the 1984 Amendment and Table A. Neither the Bank nor the Plan raised any objection or claimed that a mistake was made concerning the calculation of Mrs. Campagnoni's benefits.

In late 1989, two other Bank employees, Emma Fedeli and Jean Avery elected to retire under the Social Security Option. At this time, Mr. Hughes, as the Plan consultant, discovered that the Social Security Option, as amended in 1984, was costing the Plan substantially more than the normal retirement option. He brought this matter to the attention of the Plan's Board of Directors ("Board"), and recommended that they either increase the funding or reduce the Social Security Option benefits.

As a result, on January 12, 1990, the Board passed a resolution proposing to amend the Plan to discontinue using the factors in Table A and, instead, make all of the retirement options actuarially equivalent. (Defs.' Ex. A1.) This resolution became Amendment No. 4 which reads:

> Based upon a motion of the Board of Directors on January 12, 1990, the Geddes Federal Savings and Loan Association Retirement Income Plan is hereby amended as follows effective January 1, 1990:
>
> Section 10.3 *Social Security Option* shall be amended in it's (sic) entirety and replaced with the following:

> "A participant who retires before his or her normal retirement date may elect to receive a reduced benefit prior to and until his or her social Security Commencement date; so that the amount of the benefit received from the Plan when combined with anticipated Social Security Benefit will remain approximately level. Benefits under this option will be the actuarial equivalent of the normal retirement benefit described in Section 9.2."

(Defs.' Ex. A2.)

Mr. McPeak attempted to characterize the purpose of Amendment No. 4 as "clarifying a misunderstanding," (Tr. at 86), and "correct[ing] a mistake." *Id.* at 88. The defendants also described it as a "correction" to the Social Security Option in the 1984 Amendment, which "was incorrectly computed." (Defs.' Ex. C.) However, the 1984 Amendment was, in fact, being properly applied and had been done so in Mrs. Campagnoni's case. Even Mr. Hughes admitted that there was no error.[1] There was, however, a problem. The 1984 Social Security Option, as properly applied, was apparently underfunded and would tend to encourage employees to choose early retirement in order to receive the enhanced benefits. In order to correct the problem, the Board passed the above resolution and attempted to amend the Plan, to reduce the Social Security Option benefits.

Thereafter, instead of publishing the resolution and Amendment No. 4 to Plan participants and explaining the situation, the Bank proceeded to take the following steps:

1. January 23, 1990—Terminated Mrs. Salvagno as the Plan Administrator and replaced her with Mr. McPeak.
2. February 15, 1990—Mr. McPeak informed Mrs. Fedeli (one of the two employees requesting retirement under the Social Security Option) that the benefits she was quoted

---

**1.** Mr. Hughes testified "I never characterized it [the plan documents] as an error...." (Tr. at 119.)

were based upon an incorrect method of computation, but did not tell her that the Social Security Option in the Plan had been amended.

3. March 16, 1990—Mr. McPeak advised SALNY Services, Inc. (the administrator of the Plan) that the Social Security Option had been amended, and sent a copy of Amendment No. 4 to them.

4. Mrs. Salvagno was advised by the Board that the Plan had not been amended.

5. Mr. McPeak and Mr. Hughes testified that there were some employee meetings about the Plan, but the testimony was vague, with no specifics, nor any evidence that the resolution or Amendment No. 4 were ever distributed to the employees of the Bank and participants in the Plan.[2]

6. January 17, 1991—The Bank sent a letter to the employees which stated as follows:

Your retirement plan has undergone some changes over the past year in order to bring it into conformance with current regulations governing these plans.

During this process it was discovered that the Social Security Option, which is on of the plan's payout options, was incorrectly computed. This was corrected so that all payout options under the plan are the equivalent of each other and, therefore, no one employee or group of employees will receive a greater or lesser benefit than any other employee in a similar situation. Without this corrective action, the plan's funding may have been jeopardized . . .

The Social Security Option will be an available option under the plan and it will be calculated so that it is the financial and actuarial equivalent of any other option. . . .

(Defs.' Ex. C.)

Copeland retired effective December 31, 1993. She elected the Social Security Option. The defendants computed her retirement benefits under the provisions of Amendment No. 4. Copeland demanded benefits pursuant to the 1984 Amendment, but the defendants refused. This action ensued.

## III. *CONCLUSIONS OF LAW*

### A. *Issue*

The defendants argue that the issue in this case is whether the denial of plaintiff's claim for Social Security Option benefits was reasonable, or was in fact, arbitrary and capricious. Such is not the case. The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (italics in original). In the instant case,

---

**2.** Mr. McPeak testified that he "had several conversations with several of the employees as regard (sic) to this issue, we discussed the problem and solution with the other officers in the corporation, many of the employees of the association as well." (Tr. at 105.) He also testified that "Mr. Hughes .. talked to the group, the employee group, he talked to individual members, the employees, he talked to groups of employees, so there was a lot of verbal communication that went on from the point in early 1990, all throughout." *Id.* at 106.

Mr. Hughes' testimony on this issue was as follows:

I know that I had several conversations with Mrs. Salvagno about the Social Security Options . . . I don't actually remember sitting down with all the employees in a big meeting room and going through it. I definitely know I spoke to several employees who asked this question on a one-on-one basis or maybe a couple of, couple at a time as to how this works, what is actuarial equivalence. We enforced that none of the benefits in the plan had been changed, just that one option form of them. *Id.* at 124.

however, there is no disagreement as to the interpretation of the Plan or Copeland's eligibility for benefits. Thus, this case does not involve interpretation of the Plan, but rather, which provision of the Social Security Option applies to the plaintiff—the 1984 Amendment or Amendment No. 4 of 1990.

Contrary to defendants' assertion, the real issue in this case is whether the defendants properly amended the Plan in 1990. If so, the plaintiff would only be entitled to the Social Security Option benefits pursuant to Amendment No. 4. If not, the plaintiff would be entitled to the higher Social Security Option benefits under the 1984 Amendment.

Based upon the pleadings alone, wherein the defendants deny an amendment was made in 1990 and also assert the affirmative defense that there was no amendment, it would be proper to conclude that the Social Security Option was never amended in 1990, and therefore, the plaintiff is entitled to benefits pursuant to the provisions of the 1984 Amendment.[3] However, the merits of the claim will nevertheless be discussed.

### 1. *Requirements Concerning Notice of Amendment*

■ Plaintiff contends that defendants failed to provide adequate written notice of Amendment No. 4, and therefore, said amendment was not properly adopted. ERISA mandates that

> A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to (A) each participant in the plan. . . .

29 U.S.C. § 1054(h)(1).[4] "[S]ignificant reduction[s] in early retirement benefits triggers the notice requirements of § 1054(h)." *Normann v. Amphenol Corp.*, 956 F.Supp. 158, 165 (N.D.N.Y.1997) (McAvoy, C.J.).

In the present case, the January 12, 1990 resolution resulted in a substantial reduction in benefits for those choosing the Social Security Option. This is clear not only from the numbers,[5] but also from the fact that the Board was fearful that if a change was not made, the entire Plan would be in jeopardy for inadequate funding. Consequently, the Bank must demonstrate that adequate notice was given to all plan participants, particularly Copeland, at the proper time, in accordance with § 1054(h).

■ As stated above, notice must be given "after adoption of the plan amendment and not less than 15 days before the

---

**3.** Ironically, it is the plaintiff that alleges in her complaint that the Plan was amended in 1990. (Compl.¶ 9.) But even more unusual, as previously stated, the defendants deny the allegation and assert as an affirmative defense, that "[t]he Plan was not amended as alleged by plaintiff." (Answer ¶ 30.) However, the plaintiff also alleges that the amendment was not properly adopted. (Compl.¶ 23.) The defendants further complicated matters by their reluctance to assert that the Plan was amended in its response to interrogatories. It was not until the defendants filed proposed Findings of Fact and Conclusions of Law on March 9, 1999, and a post trial brief on May 7, 1999, that defendants directly asserted that the Social Security Option was amended in 1990. Even during the trial itself, the principals of the defendants seemed hesitant to claim that the Plan had been amended in 1990.

**4.** The applicable plans are: Defined benefit plans and certain individual account plans.

**5.** For example, under the Social Security Option in the 1984 Amendment, plaintiff was entitled to receive $458.34 per month until she reached the age of 65 and $5.00 per month thereafter. (Tr. at 54.) However, under Amendment No. 4, she would receive significantly less: Mr. Heaton testified that plaintiff would be entitled to $266.87 per month until 65 and nothing thereafter, *Id.* at 59, and Mr. Hughes testified she would be entitled to $330 per month until 65 and $5.00 thereafter. *Id.* at 129.

effective date of the plan amendment." § 1054(h)(1). In this case, the Board amended the Plan on January 12, 1990, but the effective date of the amendment was January 1, 1990, eleven days earlier. (Defs.' Ex. A2.) By making the effective date retroactive, the Board made it impossible to give notice of the amendment 15 days before its effective date. Consequently, the Bank could not, and did not, give timely notice of the adoption of Amendment No. 4.

■ In addition to its failure to timely notify plan participants that it amended the Plan, the Bank also failed to provide adequate notice. The plan administrator is required to set forth "the plan amendment and its effective date" to each plan participant. § 1054(h)(1). The only "notification" the Bank provided to employees was a one-page ambiguous memorandum that referred to an incorrect computation of the Social Security Option that was "corrected" in order to save "the plan's funding." (Defs.' Ex. C.) In addition, this memorandum did not state, in any manner, that an amendment had been made and when the effective date was; nor did it explain that the specific early retirement reduction factors were being eliminated. Furthermore, the terms of Amendment No. 4 were never provided to the Plan participants as required by § 1054. Finally, as further evidence that Amendment No. 4 is not binding on plan participants, the bank actually denied that an amendment had been made. Accordingly, plaintiff is entitled to receive Social Security Option benefits under the 1984 amendment.

## 2. *Breach of Fiduciary Duty Claim*

■ Plaintiff also claims that the Bank breached its fiduciary duties by denying her claim for benefits under the 1984 Amendment. This claim appears to be, in substance, a reiteration of her claim for a recalculation of benefits under 29 U.S.C. § 1132(a)(1)(B). To the extent that Copeland suggests that she may recover on a separate, breach of fiduciary duty theory, she misconstrues the relevant statutory provisions. ERISA's civil enforcement provisions specify the grounds upon which plan participants may seek relief. *See* § 1132. A review of § 1132 reveals that there is no provision where a plan participant may raise a claim for breach of fiduciary duty on his or her own behalf. The subsection which deals with liability for fiduciary misconduct, § 1132(a)(2), only authorizes "relief to the plan itself, and [is] not a separate source of entitlement to relief for individual plan participants." *Algie v. RCA Global Communications, Inc.*, 891 F.Supp. 839, 868 (S.D.N.Y.1994), *aff'd*, 60 F.3d 956 (2d Cir.1995) (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–44, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). "Given the availability of a statutory remedy upon the showing of an entitlement to benefits, there is no reason to define a separate claim-not supported by statutory language-that would provide the same relief for the same wrong." *Id.*

■ To the extent that plaintiff's breach of fiduciary duty claim is premised on § 1132(a)(3),[6] it has been held that "[a] plaintiff may not pursue a claim for breach of fiduciary duty based on section 502(a)(3) [§ 1132(a)(3) ] where that claim seeks relief that duplicates the relief sought on a claim for benefits under section 502(a)(1)(B) [§ 1132(a)(1)(B) ]." *Joyce v. Curtiss–Wright Corp.*, 992 F.Supp. 259, 270 (W.D.N.Y.1997), *aff'd*, 171 F.3d 130 (2d Cir.1999) (citing *Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1006 (8th Cir.1996)).

6. This section affords plan participants, beneficiaries, and fiduciaries the ability to bring a civil lawsuit "(A) to enjoin any act or practice which violates any provision of this subchapter [protection of employee benefit rights] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." § 1132(a)(3).

Copeland contends that she is entitled to a recalculation of benefits consistent with the terms contained in the 1984 Amendment, rather than the terms of the 1990 Amendment on the theories that: (1) Amendment No. 4 is not binding because plan participants were not provided adequate or timely notice; and (2) the Bank breached its fiduciary duties. Thus, she seeks the same relief based upon both theories. Plaintiff's breach of fiduciary duty claim must, therefore, be dismissed since it duplicates her claim to recover benefits due pursuant to § 1132(a)(1)(B).

### B. *Damages*

As a result of the Bank's failure to give timely or adequate notice of the terms of Amendment No. 4 to its participants, said amendment was not in effect at the time Copeland elected to receive early retirement benefits pursuant to the Social Security Option. Consequently, she is entitled to the Social Security Option benefits under the 1984 Amendment.[7]

Both experts (Mr. Heaton and Mr. Hughes), agreed that under the Social Security Option in the 1984 Amendment, plaintiff is entitled to $458.34 per month from January 1, 1994, through August 1, 2002, and $5.00 per month thereafter. The plaintiff is also entitled to pre-judgment interest at 9% per annum.[8] This results in an award of $42,605.10.[9]

The plaintiff is also awarded reasonable attorney's fees and expenses. *See* 29 U.S.C. § 1132(g)(1). The parties are encouraged to settle or stipulate the amount. All other claims of the plaintiff are denied.

### IV. *CONCLUSION*

Based upon the above, it is

ORDERED, that

1. Plaintiff is awarded the sum of $42,-605.10;

2. Defendants are directed to pay plaintiff $458.34 per month from August 1, 1999, through August 1, 2002, and $5.00 per month thereafter for the remainder of her natural life;

3. Plaintiff is awarded reasonable attorney's fees and expenses, and may file and serve an application with contemporaneous records by August 20, 1999. The defendants may file and serve a response on or before September 3, 1999. The issue will be decided on submit and a final judgment will be entered thereafter.

IT IS SO ORDERED.

---

7. Plaintiff introduced a 1992 Plan into evidence. (Pl.'s Ex. 20.) However, neither side argued how the 1992 Plan effects this case, and therefore, it has not been considered in this decision.

8. *See* N.Y.C.P.L.R. § 5004 (McKinney 1992).

9. $458.34 from January 1, 1994 to August 1, 1999; $458.34 from February 1, 1994 to August 1, 1999, $458.34 from March 1, 1994 to August 1, 1999, etc.